ALBERT LURIE *et al.*

*v.*

JENNIE RADNITZER *at al.*

*Filed at Ottawa May 11, 1897.*

166    609
99a    ⁶557
f99a   ⁵558

1. WILLS—*an erasure is effective though the canceled words are legible.* A clause in a will canceled at the testator's direction before signing, by the drawing through it of a line, leaving the words clearly legible, is no more a part of the will than if the words had been completely obliterated or the clause had never been inserted.

2. SAME—*testator's intention to disinherit an after-born child must be indicated by the will.* Although a testator's intention to disinherit an after-born child need not be expressly stated in the will, yet it must in some way be indicated thereby.

3. SAME—*effect of knowledge by the testator that a child was likely to be born to him.* The fact that a will shows that the testator knew, at

166—39

the time of its execution, that a child was likely to be born to him for whom he made no provision, will not deprive such child of its rights under the provisions of section 10 of the act concerning descent. (Rev. Stat. 1874, p. 419.)

4. SAME—*testator is presumed to know the law making provision for an after-born child.* A testator is presumed to know that if he made no provision in his will for an unborn child, and did not indicate thereby his intention to disinherit it, it would, if born alive, receive its share of his estate under the provisions of the statute.

5. EVIDENCE—*canceled clauses not to be considered in determining testator's intention.* Canceled clauses in a will, which make provision for an unborn child, cannot be considered as tending to prove the testator's intention to disinherit such child.

6. SAME—*testator's declarations made at time of making erasures are not admissible to prove intention.* Declarations of a testator, made at the time of erasing a clause in his will which made provision for an unborn child, are not admissible to prove his intention to disinherit such child.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

Appellee Jennie Radnitzer (formerly Jennie Lurie) filed her bill of complaint in the Superior Court of Cook county praying for the partition of certain lands owned by Adolph Lurie, her former husband, at the time of his death. Adolph Lurie, at his death, left him surviving his widow, the said Jennie Lurie, who was his third wife, and three children, namely: Albert, aged about fourteen years, Gottlieb, aged about nine years, and Bertha, aged about eight years. These three children were the children of his former wives. The other appellee, Adolph Lurie, is the posthumous child of the deceased, Adolph Lurie, and was born about three months after his death. Adolph Lurie, senior, died testate, having made and published his last will and testament, which was duly admitted to probate. The original instrument, as it appeared, was as follows:

"I, Adolph Lurie, of the city of Chicago, county of Cook and State of Illinois, being of sound mind and memory and considering the uncertainties of this life, do

therefore make, ordain, publish and declare this to be my last will and testament.

"*First*—I hereby order and direct that my executors hereinafter named pay all my just debts and funeral expenses as soon after my decease as conveniently may be.

"*Second*—I hereby give, devise and bequeath to my friend, Jacob Kauder, the sum of two hundred dollars.

"*Third*—I hereby give, devise and bequeath to my beloved wife, Jennie, two-fifths (⅖) of all my property, real, personal or mixed, of every name and nature which I now have, may die possessed of or may be entitled to at the time of my death, her heirs and assigns forever.

"*Fourth*—I give, devise and bequeath to my beloved children, Albert, Gottlieb and Bertha, to each one-fifth (⅕) of all my property, real, personal or mixed, of every name and nature, which I now have, may die possessed of or may be entitled to at the time of my death, to be theirs forever.

"*Fifth*—I give, devise and bequeath to my child as yet unborn, and future heir, one-fifth (⅕) of all my property, real, personal or mixed, of every name and nature, which I now have, may die possessed of or may be entitled to at the time of my death.

"*Sixth*—I do, by this, order and direct that Joseph Lurie and Ignac S. Lurie shall have the custody and tuition of my beloved children, Albert, Gottlieb and Bertha, during their minority, and do hereby appoint said Joseph Lurie and I. S. Lurie as their guardian.

"*Seventh*—I hereby order and direct that my business at both the stores, namely, at the corner of Van Horn street and Hoyne avenue, and also at No. 561-563 Blue Island avenue, shall be kept up and conducted in the future as it has been in the past, providing it can consistently be done so.

"*Eighth*—I do hereby name, constitute and appoint Joseph Lurie and Ignac S. Lurie as the executors of this my last will and testament, and it is my wish, and I do

hereby request, that they may not be compelled to give any bond or security as such executors or guardians.

"*Ninth*—I hereby order and direct that ~~in case the child wherewith my wife is pregnant at this time should be still-born, or~~ in case any of my children, Albert, Gottlieb or Bertha, should die before attaining their maturity, then his or their shares shall be divided equally, share and share alike, among the remaining children.

"*Tenth*—It is my wish and I hereby order and direct that my executors hereinbefore mentioned shall have the power and authority to sell any or all of the real or personal estate, at public or private sale, for such price and upon such terms as they may deem best, and to convey title thereto by proper deeds.

"In witness whereof I have hereunto subscribed my name and affixed my seal, the nineteenth day of February, in the year of Lord one thousand eight hundred and ninety-two (1892).          ADOLPH LURIE.    [SEAL.]

"This instrument was on the day of the date thereof signed, published and declared by the said testator, Adolph Lurie, to be his last will and testament, in the presence of us, who, at his request, have subscribed our names thereto as witnesses, in his presence and in the presence of each other.

                    CHRISTIAN R. WALLECK,    [SEAL.]
                    FRANK ZAJICEK.          [SEAL.]

"Corrections and erasures made before this will was signed, and with my sanction and approval and by my order.          ADOLPH LURIE.    [SEAL.]

"Signature witnessed by
          CHRISTIAN R. WALLECK,
          FRANK ZAJICEK."

As appears from the erased fifth clause and the erasures in the ninth clause, all that part of the instrument as it stood before it was signed by the testator making provision in the will for the unborn child could still be

read, and reference is made in the certificate of the testator to the corrections and erasures as having been made by his sanction and approval before the will was signed. The court below found that as it did not appear by the will that it was the intention of the testator to disinherit such posthumous child, the devises and legacies should be abated in equal proportion to raise a portion for such child equal to that which it would have been entitled to receive out of the estate if the testator had died intestate, as provided by section 10, chapter 39, of the Revised Statutes, and from that decree an appeal to this court has been taken.

COWEN & HOUSEMAN, for appellants:

The presumption that the omission to name or provide for a child was unintentional, is rebutted when the tenor of the will, or any part of it, indicates that the child was not forgotten. *McCourtney* v. *Mathes*, 47 Mo. 533; *Pounds* v. *Dale*, 48 id. 270; *Hockensmith* v. *Slusher*, 26 id. 237.

Wherever it may be fairly presumed from the tenor of the will, or of any clause in it, that the testator intentionally omits to give a legacy or to make a devise to his child, or to a grandchild whose parent is dead, the court will not interfere. *Wilder* v. *Goss*, 14 Mass. 356.

Courts will adopt any reasonable construction of a will so as to give it effect to dispose of. the testator's entire property, rather than to hold an intention to die testate as to part and intestate as to other property. *Taubenhan* v. *Dunz*, 125 Ill. 524; *Scofield* v. *Olcott*, 120 id. 362; *Hamlin* v. *Express Co.* 107 id. 443; *Bland* v. *Bland*, 103 id. 11; *Higgins* v. *Dwen*, 100 id. 554; *Bailey* v. *Bailey*, 25 Mich. 185.

Where doubt exists as to the intention of the testator, other aids besides the will itself can be called upon. *Brownfield* v. *Wilson*, 78 Ill. 467; *Ramsdell* v. *Wentworth*, 106 Mass. 320; *Tuxbury* v. *French*, 41 Mich. 7; *Wilson* v. *Fosket*, 6 Metc. 400; *Dakin* v. *Dakin*, 97 Mich. 292; *Perry* v. *Bowman*, 151 Ill. 25; *Converse* v. *Wales*, 4 Allen, 512.

HAMLIN, HOLLAND & BOYDEN, for appellee Jennie Radnitzer:

It is the law everywhere that a posthumous child is an heir of its father and entitled to all the benefits of the law of inheritance. 4 Kent's Com. (13th ed.) 412; Rev. Stat. chap. 39, par. 9.

An heir is not to be ·disinherited without an express devise or necessary implication,—such implication purporting, not natural necessity, but so strong a probability that an intention to the contrary cannot be supposed. 4 Jarman on Wills, 704; *Gelson* v. *Shields,* 78 N. Y. 275; *Irwin* v. *Zane,* 15 W. Va. 646.

A posthumous child cannot be disinherited by merely showing that an omission to refer to him in the will was intentional. *Waterman* v. *Hawkins,* 63 Me. 156.

If the testator has failed to provide by will for such a child in the way he intended to, then the omission of the child's name from the will does not constitute a disinheritance, under the statute. *Ramsdell* v. *Wentworth,* 101 Mass. 125.

WILLIAM ELIOT FURNESS, guardian *ad litem* of Adolph Lurie:

A posthumous child for whom no provision is made in a will takes a portion of the estate as if its parent died intestate, said portion to be made up by abatements from the devises and legacies given by the will, unless it shall appear by the will that it was the intention of the testator to disinherit said child. Rev. Stat. sec. 10, chap. 39; *Ward* v. *Ward,* 120 Ill. 111; *Bank* v. *White,* 159 id. 136; *Osborn* v. *Jefferson,* 116 id. 135.

Erasures made in the will before it is executed,—*i. e.,* before it became a will,—are no part of the will, and to use them as showing the intent of the testator is to use extrinsic evidence, which is never to be used in arriving at his intent except to explain a latent ambiguity. *Giles* v. *Anslow,* 128 Ill. 194; *Denton* v. *Clark,* 9 Stew. 534; *Jenks*

v. *Jackson*, 127 Ill. 350; *Dickinson* v. *Dickinson*, 36 Ill. App. 507; *Blatchford* v. *Newberry*, 99 Ill. 11; *Courtland* v. *Conway*, 116 id. 438; *Bradley* v. *Rees*, 113 id. 327; *Taubenhan* v. *Dunz*, 125 id. 529; *Hayward* v. *Loper*, 147 id. 41; *Insurance Co.* v. *Bauerle*, 143 id. 459; *Bingel* v. *Volz*, 142 id. 214.

The presumption that every man knows the law extends to the presumption that the law as to posthumous children is known to the testator. *Stoniger* v. *Stoniger*, 161 Ill. 270.

The intention of the testator, which must govern, is to be ascertained from the whole will. *Giles* v. *Anslow*, 128 Ill. 194; *Jenks* v. *Jackson*, 127 id. 350.

In the absence of latent ambiguity it is the duty of the court to gather the intention from the will alone. *Dickinson* v. *Dickinson*, 36 Ill. App. 507; *Blatchford* v. *Newberry*, 99 Ill. 11; *Courtland* v. *Conway*, 116 id. 438; *Bradley* v. *Rees*, 113 id. 327; *Taubenhan* v. *Dunz*, 125 id. 529; *Hayward* v. *Loper*, 147 id. 41.

In case of a supposed ambiguity appearing upon the face of the will, parol evidence is not admitted to supply, contradict, enlarge or vary the words of the will, or to explain the intention of the testator. *Insurance Co.* v. *Bauerle*, 143 Ill. 459; *Bingel* v. *Volz*, 142 id. 214.

The presumption that every man knows the law extends to a presumption that the testator knows that marriage revokes a will. *Stoniger* v. *Stoniger*, 161 Ill. 270.

The court will not allow the heir-at-law to be disinherited, unless the intent to so do is very clearly expresed. 1 Redfield on Wills, 434; 3 Jarman on Wills, 704.

Mr. JUSTICE CARTER delivered the opinion of the court:

The question here is, whether it appears by the will of Adolph Lurie, deceased, that it was his intention to disinherit his then unborn child, who is one of the appellees herein.

Section 10 of chapter 39 of the Revised Statutes is as follows: "If, after making a last will and testament, a

child shall be born to any testator, and no provision be made in such will for such child, the will shall not on that account be revoked; but unless it shall appear by such will that it was the intention of the testator to disinherit such child, the devises and legacies by such will granted and given shall be abated in equal proportions, to raise a portion for such child equal to that which such child would have been entitled to receive out of the estate of such testator if he had died intestate, and a marriage shall be deemed a revocation of a prior will."

The will upon its face bears evidence that at the time of its execution the testator knew that his wife was pregnant with this child, for, independently of the fact that the erased clauses, whether originally written by him or at his direction or not, were after such erasures easy to be read, he expressly refers in the certificate to the will, signed by him, to the corrections and erasures, (and there were no such corrections or erasures except those canceling the provisions mentioned in the fifth and ninth clauses,) and stated that such corrections and erasures were made before the will was signed, and with his sanction and approval and by his order. We think, therefore, that it sufficiently appears that the testator had said unborn child in mind. But the question still remains whether it *appears by the will that it was his intention to disinherit such child.*

It must be conceded that the erased clauses are no more a part of the will than if they had been so completely erased that they could not be read or had never been inserted in the draft for such will; and it must further be admitted that no provision was made in this will for such child. So it is by no means clear that the case does not fall within the section of the statute above quoted, for the child was born after the will was made and no provision was made for the child in the will, and unless it appears from the will itself that it was the intention of the testator to disinherit the child, the case must

be controlled by and the child must take under said section of the statute. We have heretofore held that it is not necessary that such intention to disinherit should expressly appear by the will, but that it is sufficient "if the testator simply indicate by his will that such was his intention." (*Hawhe* v. *Chicago and Western Indiana Railroad Co.* 165 Ill. 561; *Osborn* v. *Jefferson Nat. Bank,* 116 id. 130.) In the case at bar the most that can be said, it seems to us, is, that the testator knew of such child, and that for reasons not disclosed he thought it proper to make no mention of it in his will. The will contains nothing from which it can justly be said that the testator did not intend that the statute should have its full operation. The presumption must be indulged that he knew the law, —that he knew of the provisions of this statute. The will contains no language having any tendency to show an intention to disinherit. So far as this child is concerned, it contains no negative expressions whatever, and were it not for the erased provisions appearing in connection with the will as finally made, and the reference to them in the certificate signed by him, it would be clear, beyond doubt, that said posthumous child would be entitled, under the statute, to its share. The mere fact that the testator knew that such child was likely to be born to him, and that he had such knowledge when he executed his will, would not be sufficient, under the statute, to deprive such child of his share in his father's estate. It will be noticed that the will, as originally drawn, undertook to dispose of six-fifths of the estate. This anomaly was corrected by canceling the provision, as it then stood, for this unborn child. It may be observed, also, that the testator could not know that the child would be born alive. He did know, however, as it must be held, that if he made no provision for the child, and did not by the will show an intention to disinherit it, it would, if born alive, receive its due share under the statute making provision in such cases. Had it been

his intention, as contended by appellants, that the provision in the will giving his wife two-fifths of his estate should inure also to the benefit of this child if born alive, we would expect to find something in the will to indicate such intention. If such intention appeared in any way by the will this provision of the statute would not apply, for then a provision would have been made by the will for the child. Suppose the testator had, himself, prepared a draft of his will and had signed it, which draft contained the same provisions which were erased in the instrument offered in evidence, and had submitted such draft to his counsel with the request to incorporate such provisions and to draw an instrument for a will in accordance therewith, for him to execute, and had afterward directed his counsel to omit from such instrument the provisions in the draft made by him relating to such unborn child, and such instrument had been so drawn, omitting the provisions last mentioned, and had been duly executed by him; could the draft for such will as originally prepared by him be held sufficient to show, either expressly or impliedly, that it appeared by the will that the testator intended to disinherit such child? If not, can the canceled provisions of this will have any greater force as tending to prove such intention?

The meaning of the statute is, that the intention to disinherit must appear from the will, and the court below therefore properly refused to allow proof to be made as to what the testator said when the erasures above mentioned were made. While, as said in *Hawhe* v. *Chicago and Western Indiana Railroad Co. supra*, evidence as to the circumstances surrounding the testator at the time the will was made is often proper and sometimes indispensable to an intelligent construction of the language used, by enabling the court to stand in the testator's place and to read the will in the light of those surrounding circumstances, still this would not authorize the admission of evidence as to what the testator said his intention was

with respect to his will or any part of it.    The intention must be derived from the will itself.

We are of the opinion that it does not appear by the will in question, expressly or by implication, that the testator intended to disinherit the child in question, and that the construction placed upon the will by the court below was correct.

We have been referred to many authorities under similar statutes of other States, and which we have examined, but none of them cover the precise point here involved, nor does the reasoning employed lead us to any other conclusion than the one stated.

Finding no error, the decree of the Superior Court will be affirmed.
                                                        *Decree affirmed.*