FANNY HAWKINS *et al.* Defendants in Error, *vs.* CHARLES McKEE *et al.* Plaintiffs in Error.

*Opinion filed April 23, 1926.*

1. WILLS—*construction of will in determining intention to disinherit after-born children.* An intention of a testator to disinherit after-born children by his will must be drawn from the will itself, and statements of the testator made before or after the will was executed cannot be received, but the intention need not be declared in express terms in the will; and where there is no intention indicated in the will, the rule in case of a latent ambiguity applies, and facts and circumstances surrounding the testator when the will was made, such as the existence of other children not mentioned in the will, may be considered.

2. SAME—*when devise abates on account of after-born children.* Where the testator had no children at the time of the execution of his will and there is no indication in the will nor in the circumstances surrounding the testator of an intention to disinherit after-born children, a devise of all the testator's real estate to his wife must be held to abate, under section 10 of the Statute of Descent, in favor of two children who were born to the testator after the execution of the will; and the fact that the shares of the after-born children in such case consume the entire estate, subject to the widow's dower and homestead, does not constitute a revocation of the will.

3. SAME—*when conveyances by devisee do not preclude abatement of devise.* Where the testator, having no children when he executed his will, devises all his real estate to his wife but such devise abates because of after-born children, conveyances by the widow do not estop said children from claiming the property through the abatement of the devise, where it is not shown that they received the purchase price; nor does the fact that some of the proceeds may have gone to pay debts of the testator have the effect of validating the widow's conveyances where there is no evidence that the testator's debts ever became a lien on his real estate, as the purchasers are chargeable with notice of the rights of the after-born children.

WRIT OF ERROR to the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

W. H. JUETT, WILLIAM MUMFORD, and BARRY MUM-FORD, for plaintiffs in error.

CAPPS & WEAVER, for defendants in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Defendants in error filed a bill for partition in the circuit court of Pike county seeking partition of certain tracts of land therein described. The bill alleges that William T. Hawkins died May 9, 1913, leaving a widow, Betty Hawkins, and two children, Fanny and Elisha Hawkins, minors, defendants in error herein, as his only heirs-at-law; that at the time of his decease he owned the tracts of land in question, and that during his lifetime he executed a will, by which he purported to devise all of his property, real and personal, to his wife; that after the death of Hawkins his widow married Ed. Ringhausen, and, claiming to be the owner of the fee in said tracts of land, she made deeds purporting to convey the different tracts to the various plaintiffs in error, some of whom deeded to other plaintiffs in error. It is unnecessary to follow the transfers of these lands, as there is no question concerning the regu-

larity of the conveyances if Betty Hawkins Ringhausen had the fee simple title to said lands. The bill, however, alleges that the will of Hawkins, by which his widow (later Betty Ringhausen) claimed the right to make deeds to said tracts ʻof land, was executed on January 9, 1908, before the birth of either of defendants in error, complainants, who are the only children of Hawkins and his wife; that Fanny Hawkins was born on November 27, 1908, and Elisha Hawkins was born on September 9, 1910; that it does not appear from the will of Hawkins that he intended to disinherit his two after-born children, and that by force of the statute in such case made and provided, the bequest and devise made to Betty Hawkins, as the widow of the testator, abated, and defendants in error became the owners in fee of the real estate as though Hawkins had died intestate, subject only to the dower and homestead in their mother. The bill alleges that Betty Hawkins (later Betty Ringhausen) is now deceased, and that therefore defendants in error are the owners in fee simple of all the real estate, free from homestead and dower; that plaintiffs in error took from Betty Hawkins her dower and homestead interest, only, and that such interest· on her death became extinguished and plaintiffs in error therefore hold nothing by their deeds.

Plaintiffs in error by their answer deny that it did not appear by the will of Hawkins that it was his intention to disinherit his after-born children, but aver that, on the contrary, it did so appear, and that therefore the statute referred to in the bill did not apply. The answers of the various plaintiffs in error also alleged that each, as purchaser, entered into the respective tracts purchased by them, paid the full consideration therefor and all taxes thereon, and in some instances made improvements.

The circuit court found that defendants in error are owners in fee of the property and decreed partition in accordance with the prayer of the bill. The decree also found that

plaintiff in error Charles McKee had made improvements on tract No. 2 purchased by him, amounting to $400; that plaintiff in error Rose Utterbach, together with those from whom she had purchased tract No. 5, had placed improvements on the tract to the amount of $100; and that plaintiff in error Henry Ogle had placed improvements on tract No. 6, purchased by him, amounting to $40. The decree directed that commissioners be appointed to appraise the lands and improvements separately, and that such plaintiffs in error have their respective liens for such proportion of the total value of the premises as the value of the improvements bore to the value of the land separate from the improvements, and in the decree approving the report of the commissioners the court found that McKee, Utterbach and Ogle were entitled to liens on the tracts held by them for such improvements.

The principal question involved in this case concerns the application of section 10 of chapter 39 of our statutes, relating to descent. This section, so far as material here, is as follows: "If, after making a last will and testament, a child shall be born to any testator, and no provision be made in such will for such child, the will shall not on that account be revoked; but unless it shall appear by such will that it was the intention of the testator to disinherit such child, the devises and legacies by such will granted and given, shall be abated in equal proportions to raise a portion for such child equal to that which such child would have been entitled to receive out of the estate of such testator if he had died intestate," etc.

This statute has been before this court in seven different cases, hereinafter referred to. The rule laid down in those cases is, that while statements of the testator made before or after a will is executed cannot be received to prove what was intended by the words of the will, still, under the section of the statute referred to, it is not essential that the testator's intention to disinherit after-born children shall be

declared in express terms, but the same may appear from a consideration of proven facts and circumstances surrounding the testator when the will was made, not for the purpose of changing the language of the will but to explain its meaning.

The language of the will in this case is: "I give and devise all of my real estate of every kind and nature whatsoever to my wife Betty Hawkins, and lastly, I give and bequeath all the rest and remainder of my personal estate, money, goods and chattels of whatever nature or kind soever to my wife Betty Hawkins whom I hereby appoint sole executrix of this my last will and testament hereby revoking all former wills by me made." The question is whether the testator intended to disinherit after-born children. Such intention must be drawn from the will itself. While evidence of circumstances surrounding the testator may be received, such evidence is competent only for the purpose of showing the intention of the testator, where there is an ambiguity in the will, with reference to disinheriting after-born children. That question was before this court for the first time in *Osborn* v. *Jefferson Nat. Bank,* 116 Ill. 130. In that case the testatrix by the first clause of her will gave her entire estate, real and personal, to her husband, provided he survived her. By the second clause of the will she provided that in case her husband did not survive her and she died leaving a child or children her estate was to go to such child or children. The will was executed in 1873, during which year she had married Francis S. Osborn. She died in 1880, leaving three children: Ralph, eleven years of age, evidently a child of a former marriage; Abner, six years of age; and Eliphalet, five years of age. The question was whether by this will she intended to disinherit after-born children, and it was held that such intention appeared by the will. The rule is there announced that such intention need not be stated in express terms in the will, but if such intention can be gathered

from the language of the will it will be held to have been the intention of the testator. It was apparent in that case that the testatrix had one child at the time of the making of the will, and that the language of the will devising all her property to her husband, and in case of his death to her children surviving her, showed not only an intention to leave her entire estate to her husband if he survived her, but to provide for the children in case her husband pre-deceased her. This was held to be a provision for the children, and it was held that the statute concerning the abatement of devises and legacies did not apply.

The construction of section 10 of the Descent act again came before this court in *Ward* v. *Ward,* 120 Ill. 111. In that case the will of James Ward left his property to his wife and living children but made no provision for a son who was born after the will was made but prior to the death of the testator. The will was executed on May 12, 1880. The son, who was complainant in that case, was born on July 15, 1880. The testator had eight other children, born prior to the making of the will. In that case it was held that the devises and legacies should each be abated to pro-vide a one-ninth interest for the complainant son, subject to the dower of the widow, it being there held that it did not appear by the will that the testator intended to disin-herit this after-born child.

In *Salem Nat. Bank* v. *White,* 159 Ill. 136, the testator made his will devising all of his real estate to his widow and three children. Subsequent to the making of the will another child was born, and nearly two years thereafter the testator died without changing his will. It was there held that it did not appear from the will that the testator in-tended to disinherit his after-born child, and that the lega-cies and devises should be abated to raise for such after-born child a child's share.

In *Hawhe* v. *Chicago and Western Indiana Railroad Co.* 165 Ill. 561, the testator devised all of his property to his

wife. At the time of his death his family consisted of his wife, a daughter aged four and a son aged two. The appellant, another son, was born about two months after the testator's death. The will was made subsequent to the birth of the other two. The after-born son later brought suit against the widow's grantee of certain real estate owned by the testator in his lifetime, on the ground that, being a posthumous child and the will disclosing no intention on the part of the testator to disinherit him, he was entitled to a child's share in the land. The rule is there announced that extrinsic evidence may not be resorted to to show the intention of the testator where there is no latent ambiguity in the will but may be received to explain the testator's intention where latent ambiguity does exist. It was there held that the evidence concerning the circumstances surrounding the testator at the time of the making of the will did not tend to vary or change the intent of the testator but to aid in disclosing such intention as evidenced by the language, and that such evidence was competent for that purpose. It was decided in that case, in construing the will, that the fact that the testator made no allusion in his will to any of his children, either those born or to be born, but devised the property to his wife, using language of particular significance, when considered with the fact that he had two children at the time of the making of the will whom he excluded, was sufficient to show an intention on his part to disinherit not only his children living, but likewise after-born children.

In *Lurie* v. *Radnitzer*, 166 Ill. 609, the testator died leaving surviving him his widow and three children by former marriages. Three months subsequent to his death another child was born. In his will he devised his entire estate to his wife and the three living children, giving two-fifths to the wife and one-fifth to each of the three children. It appeared in the draft of the will that he had made a devise to an unborn child but that before the execution of

the will he had erased by striking out such devise. In that case it was held that even though the testator devised all of his property to his wife and then living children and had erased a devise to an unborn child, yet since the will contained no negative expressions whatever concerning the unborn child it could not be said that the will expressed an intention on his part to disinherit his unborn child. It was there held that the mere fact that the testator knew such child was likely to be born to him would not be sufficient, under the statute, to deprive the child of his share of his father's estate. It will be noted that the will in that case did not exclude children born.

In *Peet* v. *Peet,* 229 Ill. 341, the testator devised all his property to his wife. At the time the will was executed the testator had one son about three years of age. About a year and a half after the execution of the will another son was born. Evidence concerning the circumstances surrounding the testator at the time of the making of the will was received, and it was held that the testator intended by his will to disinherit his children living and to be thereafter born.

In *Froehlich* v. *Minwegen,* 304 Ill. 462, the testator devised all his property to his wife. At the time of making the will he had two children. Thereafter six other children were born. It was held that the will devising the testator's property to his wife sufficiently manifested the testator's intention to disinherit after-born children, when considered in connection with the circumstances surrounding the testator when the will was made.

It will be seen that the case at bar differs from the cases just considered in that in the present case the testator had no children at the time of the execution of the will. His first child was born nearly a year after the making of the will. In no case in this State has a will been construed as showing an intention to disinherit after-born children where the testator had no children at the time of the making of the will and after-born children were not referred to in

the will. These distinguishing facts are of such importance in considering the application of section 10 of the Descent act that the cases previously considered by this court can not be held to be controlling.

All devises *simpliciter* are by their terms to the exclusion of anyone other than the devisee, and if all such devises are to be held to be evidence of an intention on the part of the testator to disinherit after-born children, the provisions of section 10 securing a child's share to after-born children could never have application where a devise *simpliciter* appears in the will. In the instant case there is nothing in the will to indicate an intention to disinherit after-born children, and since the testator had no children and no reason to know that he would have, there is nothing to indicate that he had any intention whatever respecting after-born children. It seems clear, therefore, that it can not be said to appear from the will in this case that the testator intended to disinherit his after-born children. There are no circumstances tending even in a remote degree to establish such an intention or any intention concerning after-born children. It cannot, therefore, be said, as the statute requires, that it appears from the will that the testator intended to disinherit defendants in error, and the provisions of that section directing that the devises and legacies abate must be held to apply.

It is urged that to so hold amounts, in effect, to a revocation of the will, which section 10 specifically says shall not take place. The fact that the shares of defendants in error given them by this statute consume the entire estate, subject to the widow's dower and homestead, does not, of itself, revoke the will. The will still stands to be probated, and other provisions of it, if there be such, are to be carried out. A revocation is a destruction of the will. The abatement of all devises and legacies does not amount to a destruction of the will. It is to be probated and the estate administered by an executor chosen by the testator, whereas

an intestate estate is to be administered by an administrator to be chosen by the court.

It is also urged that defendants in error received the benefit of the purchase price of this property paid to their mother and that they are estopped to assert ownership in the lands. The evidence in this case does not show that defendants in error received the money paid to their mother for the property. It appears that she used the money to purchase some property in her own name, which was later sold to pay her debts. Under section 10 of the Descent act defendants in error were entitled to the real estate, subject to the dower and homestead rights of their mother. When plaintiffs in error purchased these lands from the mother they must be held to be chargeable with notice of the rights of defendants in error therein. Nor does the fact that some of the proceeds of the sale of this property may have been used by the mother to pay debts of the testator have the effect of making valid the void deeds of the mother by which she sought to transfer the fee to this property. (*Manternach* v. *Studt,* 240 Ill. 464.) The lands of the testator were not charged with the payment of his debts but were only liable to be so charged. (*Bishop* v. *O'Conner,* 69 Ill. 431.) There is no evidence that the testator's debts ever became a lien on this real estate. Were this an attempt on the part of creditors of the testator to subject this property to the testator's debts, claims for which had been filed according to law, a different question might arise. The issue here is not of that character.

. We are of the opinion that the will in this case did not disinherit defendants in error and that the chancellor did not err in decreeing partition. The decree will therefore be affirmed.

*Decree affirmed.*