(No. 29574.— )

CARL A. HEDLUND *et al.*, Appellees, *v.* LOIS SWEET MINER *et al.*—(LOIS SWEET MINER, Appellant.)

*Opinion filed November 20, 1946.*

BERGER & NEWMARK, (H. J. ROSENBERG, and MARVIN S. FENCHEL, of counsel,) all of Chicago, for appellant.

MIDDLETON & MIDDLETON, of Gibson City, and CLAUDE M. SWANSON, of Paxton, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This case comes to us on direct appeal from a partition decree entered in the circuit court of Ford county. The complaint for partition was filed by Carl A. Hedlund and Allen G. Miner, each of whom is the owner of an undivided one-third of the premises sought to be partitioned. The

other one-third interest was owned by Leslie E. Miner, who died seized thereof on February 22, 1943, leaving a widow, Lois Sweet Miner, and one child, Sandra Louise Miner, aged 1 year, 3 months and 19 days, at the time of her father's death.

It appears from the record that on October 11, 1941, Leslie E. Miner, who then had no children, but was shortly expecting the birth of a child, made and executed a last will and testament, which, omitting the formal parts, is as follows: "I devise and bequeath all the estate and effects whatsoever and wheresoever, both real and personal, to which I may be entitled, or which I may have power to dispose of at my decease, unto my dear wife, LOIS SWEET MINER, absolutely; and I appoint her sole executrix of this my will, and I direct that she be exempt from giving any surety or sureties on her official bond as executrix." Afterward, on November 3, 1941, the appellee, Sandra Louise, was born, and approximately two weeks later Miner delivered the executed will to his wife. Thereafter he died testate, leaving his will as originally made, and leaving him surviving his said widow and child as his only heirs-at-law.

The will was admitted to probate and letters testamentary issued to the widow, as executrix, by the probate court of Cook county, on April 22, 1943. At the hearing on the petition to probate the will, the child was represented by a guardian *ad litem,* appointed by the court. The estate of the testator, in addition to his interest in the real estate here sought to be partitioned, consisted of approximately $18,000 in cash and other personal property of considerable value. The widow filed her final account and report as executrix in the probate court of Cook county on February 3, 1944, showing payment in full of all claims and costs of administration and distribution of all the remainder of the property to herself, individually, as sole beneficiary and legatee, and an order was entered by the probate court on the same day approving the final report of distribution,

declaring the estate settled and discharging the executrix. This order was entered without notice to the child, Sandra Louise, and she was not represented by guardian *ad litem* nor in any other manner at the hearing on the final report. No appeal or other proceedings for review were taken concerning the action of the probate court.

The complaint for partition, to which both the mother, Lois, and the child, Sandra Louise, were made parties defendant, set forth the death and heirship of Leslie E. Miner. It also set forth the execution by him of his last will and testament, the subsequent birth of his daughter, Sandra Louise, twenty-two days later, the admission of the will to probate in Cook county, the issuing of letters testamentary to the widow, as executrix, and the final settlement of the estate in that court on a report of distribution of all the property of the estate to the widow as sole legatee and beneficiary. The complaint then alleged that because of the birth of the daughter after the execution of the will, a construction of the will was necessary to determine whether said child possessed any rights in the realty under section 48 of the Probate Act. The complaint concluded with a prayer that the court construe the will of Leslie E. Miner, deceased, determine the rights of the parties in the real estate, and enter a decree for partition of said lands based on such determination. Appellant answered, denying that the daughter, Sandra Louise Miner, was entitled to any interest in the real estate, and claiming that the said Sandra Louise Miner was disinherited by the will of her father, Leslie E. Miner. The guardian *ad litem* appointed for Sandra Louise filed an answer and counterclaim by which it was alleged that Sandra Louise, because of her birth after the execution of the will of Leslie E. Miner, and because it did not appear by said will that it was the intention of the testator to disinherit her, was entitled to receive two thirds of the interest which her father had in the real estate at the time of his death. The counterclaim

further alleged that the child was entitled to a two-thirds interest in the net personal estate of Leslie E. Miner; that Lois Sweet Miner was wrongfully withholding the said two-thirds share, and that the said Lois Sweet Miner holds, on a constructive trust for the benefit of the minor, two thirds of the net personal estate.

The matter was referred to a master in chancery, who, after hearings, reported that the plaintiffs were entitled to a partition; that the child, Sandra Louise, was entitled to a two-ninths interest in the real estate and a two-thirds interest in the net personal estate of Leslie E. Miner; that Lois Sweet Miner, the mother, holds in constructive trust, for the benefit of Sandra Louise Miner, the portion of the real estate involved and also two thirds of the personal property of Leslie E. Miner; that a decree of partition should be entered in accordance with the interests of the parties therein and that appellant should be directed to pay and deliver to Sandra Louise Miner two thirds of the money and personal property distributed under the order of the probate court. In arriving at this conclusion, the master held that there was no intention expressed in the will to disinherit Sandra Louise and that the provisions of section 48 of the Probate Act apply to give to the child that portion to which she would be entitled had there been no will. Objections were filed by the widow to the master's report, which were overruled by the master. The circuit court, after a hearing on the master's report and the objections thereto, which were ordered to stand as exceptions, approved the report and entered a decree in accordance with its conclusions.

To obtain a reversal of the decree, appellant makes the contention, among others, that the child, Sandra Louise Miner, (hereinafter referred to as the appellee,) was intentionally disinherited by the will of her father and therefore section 48 of the Probate Act has no application and does not operate to entitle the child to any portion of the

father's estate. Section 48 of the Probate Act reads as follows: "Unless provision is made in the will for a child of the testator born after the will is made or unless it appears by the will that it was the intention of the testator to disinherit the child, the child is entitled to receive the portion of the estate to which he would be entitled if the testator had died intestate, and all devises and legacies shall be abated proportionately therefor." (Ill. Rev. Stat. 1945, chap. 3, par. 199.) This section, which was enacted as a part of the Probate Act of 1939, is a restatement, with verbal changes only, of that part of section 10 of the Descent Act concerning the effect upon a parent's will of the subsequent birth of a child, which, prior to its repeal by said Probate Act, had been in effect for many years. This provision of section 10 of the former statute was as follows: "If, after making a last will and testament, a child shall be born to any testator, and no provision be made in such will for such child, the will shall not on that account be revoked; but unless it shall appear by such will that it was the intention of the testator to disinherit such child, the devises and legacies by such will granted and given, shall be abated in equal proportions to raise a portion for such child equal to that which such child would have been entitled to receive out of the estate of such testator if he had died intestate." Ill. Rev. Stat. 1937, chap. 39, par. 10.

Under the express provisions of both section 48 of the present Probate Act and section 10 of the former Descent Act, a will, making no provision for an after-born child, is not effective as regards such child unless it appears *by the will* that it was the intention of the testator to disinherit the child. It is evident, from the wording of the statute in both instances, that the controlling factor in determining its applicability is the testamentary intent of the parent, and that in order to remove the will from the operation of the statute, the intention to disinherit must

*appear by the will.* The requirement ·that the testator's intention to disinherit any after-born child or children must appear by the will is no different, however, from the requirement necessary to render effective any other intention of the testator, since it is well established that in all cases the intention of the testator which the courts will carry into effect is that expressed by the language of the will when interpreted in view of the facts and circumstances surrounding the testator at the time of its execution.

The object of the statute is not to control the intention of the parent or to restrict his absolute power to disinherit any child, whether living or subsequently born, but only ·to provide for such after-born children as were neither provided for nor disinherited in the will. The rule laid down in the cases involving the application of the statute is, that although the testator's intention to disinherit after-born children must be drawn from the will itself, it is not essential that such intention be declared in express terms, but the same may be drawn from the language of the will when construed in connection with the proved facts and circumstances surrounding the testator when the will was made, evidence of which may be received, not for the purpose of changing the language of the will, but to explain its meaning when there is an ambiguity in the will with reference to disinheriting after-born children. *Hawkins* v. *McKee,* 321 Ill. 198; *Hawhe* v. *Chicago and Western Indiana Railroad Co.* 165 Ill. 561; *Osborn* v. *Jefferson National Bank,* 116 Ill. 130.

The question then to be considered in this case is whether it appears by the will of Leslie E. Miner that it was his intention to disinherit his daughter, Sandra Louise Miner, whose birth was expected to and did occur within a short time after the execution of the will. Ordinarily, a will purporting to devise and bequeath all the property of a testator to a beneficiary therein named is equivalent to the expression of an intention to disinherit all other

persons, and it is unnecessary to construe the will to ascertain the testator's intentions. When, however, such will is taken in connection with the provisions of section 48 of the Probate Act, a latent ambiguity is raised and it becomes necessary to construe the will in order to ascertain if it was the intention of the testator to therein disinherit his afterborn child or children.

This court, in a number of cases involving the application of the statute, has had occasion to construe wills, including those where a devise simpliciter appears in the will as well as other forms of wills, for the purpose of ascertaining from such wills the intention of the testator as to disinheriting after-born children. Upon an examination of these cases we find that where a testator, having a living child or children and another child soon to be born, executed a will, giving to each of his living children a share in his estate, but making no provision for, or mention of, any unborn child or children and using no express words of disinheritance therein, this court has construed the will in such instances as not disclosing an intention of the testator to disinherit the after-born child. (*Lurie* v. *Radnitzer*, 166 Ill. 609; *Ward* v. *Ward*, 120 Ill. 111.) The same construction was also adopted where a will making provision for the testator's living children neither provided for nor expressly disinherited after-born children, and another child of the testator was born more than a year and a half subsequent to the execution of the will. (*Salem National Bank* v. *White*, 159 Ill. 136.) In another instance, where a testator, having two children, aged respectively four and two years, executed his will, giving all his property to his wife and making no reference or provision concerning children, present or after-born, the will was construed as disinheriting a son born two months after its execution. (*Hawhe* v. *Chicago and Western Indiana Railroad Co.* 165 Ill. 561.) In that case this court stated that it was not reasonable to believe that the testator in-

tended to exclude his two infant children, who were living with him when the will was executed, and not at the same time exclude another children to be born within the next two months thereafter. The same construction was adopted and the same reasoning applied in *Froehlich* v. *Minwegen,* 304 Ill. 462; and *Peet* v. *Peet,* 229 Ill. 341. In each of these cases it was held that a will made by a testator having at the time of its execution a living child or children, which gave all of his property to his wife and made no reference or provision concerning children, either present or after-born, sufficiently manifested the testator's intention to disinherit after-born. children, when considered in connection with the circumstances surrounding the testator when the will was made. In the *Froelich case* the testator had two children born prior to the making of his will and six born thereafter, but there is nothing showing the ages of the living children at the time the will was executed or showing how long it was thereafter before another child was born. In the *Peet case* the testator, at the time of executing his will, had one child aged three years, and another child was born about two and a half years subsequent to the making of the will.

It can be seen, therefore, that the decisions in this State are to the effect that where a testator having living children, disinherits them, little short of an express provision in the will for after-born children will be construed as sufficient to raise a portion for any after-born child; whereas, if the testator provides in his will for his living children, little short of an express disinheritance of after-born children will be construed as precluding the after-born child from sharing in the estate.

The latest case in which the applicability of the statute in question was considered by this court, and, so far as we are able to discover, the only case where the testator had no children at the time of executing the will and made no provision of any kind therein concerning children, is that

of *Hawkins* v. *McKee,* 321 Ill. 198. In the *Hawkins case* the testator, William T. Hawkins, had no children living at the time he executed his will on January 9, 1908. On November 27, 1908, a child was born to the testator and his wife, and on September 9, 1910, the birth of their second child occurred. The testator died on May 9, 1913, leaving a widow, the beneficiary in his will, and the two minor children. The will in that case was in simple language, giving and devising to his wife all his estate, real and personal, and appointing her sole executrix; and this court held that it did not, in view of the circumstances surrounding its execution, disinherit the after-born children. We there pointed out, after a review of our former decisions construing wills for the purpose of ascertaining whether or not after-born children had been disinherited, that in no case in this State had a will ever been construed as showing an intention to disinherit after-born children where the testator had no children at the time of making the will and after-born children were not referred to in the will, and also stated that these distinguishing facts were of such importance in considering the application of the statute, that the cases previously considered by this court could not be held controlling.

Both appellant and appellee cite and rely upon the *Hawkins case* in support of their respective contentions. Appellant argues that the language in the opinion that "since the testator had no children and no reason to know that he would have, there is nothing to indicate that he had any intention whatever respecting after-born children" shows plainly that had the birth of a child to the testator and his wife been imminent, and the testator, in making his will, had in mind such unborn child, then the will would have been construed as disinheriting the child. The conclusion reached does not seem to follow from the language quoted. The most that can be said of this language is that it implies that, under such circumstances, the will would

have been construed as indicating that the testator *did* have an intention respecting unborn children, but does not imply, in the least, what such intention might be construed to be.

Appellant contends that the will of Leslie E. Miner and the facts and circumstances existing at the time of the execution of the will manifest his intention to disinherit his child about to be born and exclude it from receiving any portion of his estate. The record discloses that Miner and the appellant, at the time the will was executed, were happily married and anticipating with joy the coming of the baby, and that he was solicitous of her welfare during the pregnancy. These facts and circumstances cannot justly be said to indicate that the testator intended to disinherit the child. Nor does the will contain anything indicating that he intended the statute should not have its full operation. The presumption must be indulged that he knew the law and had the provisions of this statute in mind when making his will. (*Lurie* v. *Radnitzer,* 166 Ill. 609.) The following language of this court in the case last cited might also be aptly applied to the present case: "It may be observed, also, that the testator could not know that the child would be born alive. He did know, however, as it must be held, that if he made no provision for the child, and did not by the will show an intention to disinherit it, it would, if born alive, receive its due share under the statute making provision in such cases." Viewed in this light, the testator, Leslie E. Miner, by his will provided for his wife under any and all circumstances and also for his unborn child in the event such child should be born alive and survive the testator.

We are of the opinion that it does not appear by the will in this case, when properly construed, that it was the intention of the testator to disinherit the child, Sandra Louise Miner, born subsequent to the time the will was made. There is nothing in the case of *Hawkins* v. *McKee* contrary to the conclusion we have reached in this case.

It is also claimed by appellant that the order of the probate court of Cook county admitting the will to probate, and that of said court approving distribution of the estate assets to appellant, are *res judicata* and preclude appellee's claim that she is entitled to a portion of her father's estate. The statute does not revoke the will nor require that the estate of the testator be administered as the estate of an intestate. The will still stands to be probated and its provisions carried out *pro tanto* subject to the operation of the statute. (*Hawkins* v. *McKee,* 321 Ill. 198.) The statute gives to the after-born child the right to compel contribution from the devisees and legatees under the will, but not the right to contest the will or object to its admission to probate. Nor is appellant, in view of the facts as she concedes them to exist, in a position to invoke the rule of *res judicata* as to the probate court order approving her final account and report of distribution of assets to herself as sole beneficiary under the will. Appellant admits that this order was entered by the probate court without notice to appellee, but claims the order is *res judicata* and binding upon appellee without notice. She argues that appellee was disinherited by the terms of the will, and not being entitled to any share of the estate, was not entitled to notice of hearing on the report of distribution, since the statute does not require notice to heirs, but only to unpaid creditors and to every person entitled to a share of the estate who has not received that share in full; and that therefore the probate court order approving the report of distribution is *res judicata* and binding upon appellee without notice. We are unable to follow the logic of this argument. The doctrine of *res judicata* is that a point once adjudicated by a court of competent jurisdiction may be relied upon as conclusive upon the same matter, as between the parties or their privies, in any subsequent suit, in the same or any other court, at law or in chancery. But the doctrine has no application against or in favor of anyone

not a party or privy. The doctrine is bottomed on the ground that the party to be affected, or someone with whom he is in privity, has litigated or has had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction. (*Newberry Library* v. *Board of Education*, 387 Ill. 85; *Postal Telegraph Cable Co.* v. *City of Newport*, 247 U.S. 464, 38 S.Ct. 566.) The opportunity to be heard is an essential requisite of due process of law in judicial proceedings, and courts cannot, without disregarding the requirement of due process, give a conclusive effect to a prior judgment against one who is neither a party nor in privity with a party to such prior judgment. (*Newberry Library* v. *Board of Education*, 387 Ill. 85; *Postal Telegraph Cable Co.* v. *City of Newport*, 247 U.S. 575, 48 S.Ct. 566.) It is a fundamental principle of law that controls the application of *res judicata* that one is not bound by a prior judgment if he was not a party to such action or does not stand in the relation of privy to one who was a party. *Ohio National Life Ins. Co.* v. *Board of Education.* 387 Ill. 159.

Section 290 of the Probate Act, so far as pertinent here, is as follows: "Notice of the hearing on any account of an executor or administrator shall be given as the court directs to unpaid creditors and to every person entitled to a share of the estate who has not received that share in full. If the account is approved by the court upon the hearing, in the absence of fraud, accident or mistake, the account as approved is binding upon all persons to whom the notice was given." (Ill. Rev. Stat. 1945, chap. 3, par. 444.) The attorney employed by appellant soon after the death of her husband, and who acted for her as executrix throughout the administration of the estate until discharged by her nine days before the filing and approval of her final report, advised her fully as to the right of an after-born child to inherit, and as she herself testified "tried to impress me that there was a law that a child

could take, even though there was a will." However, not-withstanding this information and advice from her attorney, she made distribution to herself, as sole beneficiary, of.all estate assets, and, through other attorneys, filed her. final report as executrix, showing such distribution, and had the same approved by the court, without obtaining an adjudication of, or bringing to the attention of the court, any alleged rights of the child to a portion of the estate assets. The order of the probate court approving her report of distribution was entered without jurisdiction of the person of appellee. It is not *res judicata* and does not preclude appellee from asserting her right under the statute to a share in the estate of her father.

It is further urged that the probate court of Cook county and not the circuit court of Ford county is the proper forum in which to assert appellee's claim to a share of the distributed assets of the estate, and that a guardian *ad litem* in a partition suit cannot initiate and press a counterclaim for personalty not associated with the realty. We cannot agree with this contention of appellant. It was formerly the rule in this State that cross bills in partition proceedings could not relate to property other than that as to which partition was sought. (*Kearney* v. *Kirkland,* 279 Ill. 516; *Dickson* v. *Dickson,* 232 Ill. 577; *Deuter* v. *Deuter,* 214 Ill. 308.) It is now provided by section 38 of the Civil Practice Act that, subject to rules, "any demand by one or more defendants against one or more plaintiffs or against one or more co-defendants, whether in the nature of set-off, recoupment, cross-bill in equity or otherwise; and whether in tort or contract, for liquidated or unliquidated damages, or for other relief, may be pleaded as a cross-demand in any action, and when so pleaded may be called a counterclaim." This provision of the statute is broad enough to permit the filing of the counterclaim in the instant case. We held in the case of *People ex rel. Bradford Supply Co.* v. *Circuit Court,* 393 Ill. 520, that

this section of the Civil Practice Act was designed to extend the filing of counterclaims to include subjects not permitted to be filed by setoff, recoupment or cross bill under former practice.

We are of the opinion that section 38 of the Civil Practice Act has done away with the strict rules formerly prevailing as to cross bills in partition suits, and that the guardian *ad litem* of the minor, whose duty it was to protect the interests of such minor throughout the litigation, had ample power and authority to file the counterclaim here involved and that the court properly awarded to the infant the relief sought. The administration of the estate had been closed and the executrix discharged in the probate court. The record discloses the amount and character of the funds and assets of the estate which appellant, as executrix, had wrongfully appropriated to her own use and which she ought not, in equity and good conscience, be permitted to withhold from appellee, who is the real owner. There is no occasion, under the circumstances, to add further costs and expenses by requiring the estate to be reopened in the probate court and there further administered, but equity and expediency require that appellant directly and immediately deliver to appellee the money and property to which she is entitled and which appellant now wrongfully withholds from her.

Appellant further argues that any share of the estate taken by appellee is subject to appellant's dower and widow's award. This question was not raised in the pleadings nor in any other manner presented to or urged in the trial court. It is a well-established rule that a point not raised in the trial court cannot be urged in this court.

We believe the decree of the trial court is correct, and the same is, accordingly, affirmed.

*Decree affirmed.*