LEVON ROLANDO, Plaintiff-Appellee, *v.* THE FARMERS AND MINERS BANK OF LADD, Defendant-Appellant.—(ALFRED JACOB, Adm'r of the Estate of Mary Rolando Halm, Defendant-Appellee.)—ALFRED JACOB, Adm'r of the Estate of Mary Rolando Halm, Deceased, Plaintiff-Appellee, *v.* THE FARMERS AND MINERS BANK OF LADD, Defendant-Appellant.

Third District Nos. 77-235, 76-398 cons.

Opinion filed May 23, 1978.—Rehearing denied June 20, 1978.

Paul Perona, Jr., of Perona & Perona, of Spring Valley, for appellant.

Anthony C. Raccuglia, of Peru (James A. McPhedran, of counsel), for appellee Levon Rolando.

Robert M. Hansen, of Herbolsheimer, Lannon and Henson, P. C., of La Salle, for appellee Alfred Jacob.

Mr. JUSTICE STENGEL delivered the opinion of the court:

In two separate cases filed in the Circuit Court of Bureau County, the issue was whether title to $15,000 in government securities which the Farmers and Miners Bank of Ladd held on behalf of Mary Rolando Halm and her nephew Levon Rolando, was in joint tenancy with right of survivorship or in tenancy in common. The judgments entered in the two cases by different judges were contradictory, and the bank appealed from both. The two appeals have been consolidated for our consideration.

In 1970 Mary Rolando Halm inherited from her brother approximately $40,000, which was placed in a checking account in defendant bank. Mary Halm signed a signature card for the account with her nephew Levon Rolando who had earlier been given a power of attorney to manage the money she would receive from her brother's estate. Rolando and his aunt met with Donald Brennan, an officer of the bank, and arranged to invest the money in federal government securities known as "Thirteen Banks for Cooperatives." These securities were in fact bearer bonds issued by government agencies in $5,000 denominations, a block of which was purchased by The Chase Manhattan Bank in New York and in turn sold by Chase to The Northern Trust Company in Chicago. The Farmers and Miners Bank then purchased $15,000 worth of the securities from Northern Trust in the names of Mrs. Halm and her nephew, and $25,000 in the names of the nephew and his wife. Physical possession of the bonds remained with Northern Trust, and a safekeeping receipt was issued to the purchasers. Brennan sent Mrs. Halm a letter dated August 5, 1970, which said:

"Please find enclosed the Safekeeping receipts for the Banks for Cooperatives purchased as follows: $25,000.00 in the name of Levon Rolando or Irene Rolando and $15,000.00 in the name of Mary Halm and Levon Rolando as Joint Tenants. Also enclosed is the charge ticket against your account in payment of the bonds. Thank you."

The safekeeping receipt enclosed with Brennan's letter in fact showed the names as "Mary Halm or Levon Rolando" with no indication of joint tenancy.

Mrs. Halm died in October of 1970 before the maturity date of the bonds, and her nephew, claiming that the securities she purchased with him were supposed to be in joint tenancy with right of survivorship, demanded payment of the full $15,000 upon maturity. Mrs. Halm's administrator, Alfred Jacob, claimed that title was in tenancy in common and demanded payment of $7,500 of the proceeds. When the bank refused payment, Rolando filed suit on February 2, 1972, against the bank in the Circuit Court of Bureau County. In the first count of Rolando's complaint, he asserted his ownership of the securities purchased jointly with his aunt and in the second count he charged the bank with negligence for failing to purchase and hold the securities in the names of Mary Halm and Levon Rolando as joint tenants with right of survivorship.

The bank responded with a petition to interplead, alleging that it had no interest in the disputed funds, asking that Jacob be added as a party, and requesting permission to pay into court the sum of $15,000 plus $537.71 interest. Rolando filed a motion to strike the interpleader petition and to add Alfred Jacob as a party. The trial court granted the motion to

strike and ordered that Jacob be added as a party defendant. Both defendants were allowed 30 days to plead. Later the trial court ordered that $7,500 plus interest be paid to Rolando since there was no dispute as to his right to one-half of the securities. After the bank filed its answer to the complaint, Jacob entered his appearance, the cause was set for trial, and notice was given to all parties. Jacob did not plead or appear at trial. Rolando testified that his aunt told Brennan to put the securities in joint tenancy. Brennan could not recall that Mrs. Halm spoke at all, and remembered very little about the transaction. The bank called no witnesses. The court found that through an error the bonds were purchased as a tenancy-in-common, and ordered that the securities be reformed "so as to correctly describe the character of title intended," that the bank pay over to Rolando the proceeds of the securities plus interest, and that Jacob, as administrator of the estate of Mary Halm, have no further right, title or interest in the securities. The bank paid the money to Rolando who then released the judgment.

Eight months later, Jacob petitioned to set aside the judgment as to him on the grounds that, upon receiving notice of trial, he had written to the other attorneys asking that the case be continued unless they had no objection to Jacob's motion to dismiss the suit as to him. The trial court granted Jacob's petition and on February 17, 1976, ordered that the prior judgment be vacated. The bank then filed a motion asking that Rolando be ordered to pay the $8,570.57 back to the clerk of the court, and also filed a motion requesting that the Rolando case be consolidated with a case recently filed by Jacob against the bank so as to avoid needless duplication. Rolando objected to the bank's motions, claiming that his judgment against the bank was valid and that the trial court lacked jurisdiction to set aside that portion of the judgment. The trial court then dismissed Jacob from the Rolando suit, reinstated Rolando's judgment against the bank, and denied the bank's motions to consolidate and to compel Rolando to pay the funds into court. Within 30 days of this order, the bank filed its notice of appeal.

In Jacob's suit filed January 26, 1976, five days before the expiration of the statute of limitations, the bank filed a motion for summary judgment, alleging that Jacob was estopped by the prior judgment from asserting any claim against the bank for the Halm-Rolando securities. The bank also alleged that Jacobs was a party to the Rolando suit until after trial when he voluntarily withdrew without having asserted his claim. The trial court denied the bank's motion for summary judgment, stating that Jacob was entitled to his day in court. Jacob's suit against the bank then proceeded to trial. Brennan testified again, this time recalling that when he placed the purchase order for the securities with Northern Trust by telephone, he requested title "as joint tenants in common." The bank

called Rolando to testify about the transaction, but the court ruled that under the Dead Man's Act his interest in the suit barred him from testifying. The court entered judgment in favor of Jacob, and the bank has appealed from that judgment as well as the earlier one. This court allowed the bank's motion to consolidate the two causes on appeal.

Although several errors are assigned by the parties to this appeal, we believe the determinative issue to be whether Jacob, having failed to assert his claim in the Rolando suit, was estopped to relitigate the question of title by means of his own suit. The bank contends that if Jacob intended to claim a one-half interest in the jointly owned securities, he should have put forward his claim in the Rolando suit after he was made a party. We note that the bank, in count I of its answer to Rolando's complaint, indicated that it had no interest in the monies and that the court should determine whether Rolando or Jacob was entitled to the funds. By this count, the bank was attempting to preserve its position as a stakeholder, and although the count was not technically in the form of a counterclaim for interpleader under section 26.2 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 26.2), the allegations were sufficient to place Jacob on notice that the bank had no preference between the two claimants. Although Jacob later filed an appearance, he made no response to the bank's pleading, and instead he eventually filed a motion requesting dismissal from the suit. Neither Rolando nor the bank objected to Jacob's motion since Jacob's voluntary withdrawal from the suit appeared to be an abandonment of his claim. The same was true as to Jacob's motion to set aside the judgment as to him.

Inexplicably, Jacob's motion to dismiss was set for hearing on February 14, 1975, but the motion was not in fact filed until March 17, 1975, and was not granted until May 24, 1976, the date the previously vacated judgment was reinstated as to the bank.

■■ ■ The doctrine of *res judicata,* which the bank seeks to invoke, provides that a former adjudication is an absolute bar to a subsequent proceeding if there is an identity of parties, subject matter, and cause of action between the two actions. In such a situation the prior judgment is conclusive not only as to what was actually determined in the first case but is conclusive also as to any question which could have been raised. (*Smith v. Bishop* (1962), 26 Ill. 2d 434, 187 N.E.2d 217.) Thus if the party against whom the doctrine is raised had an opportunity to litigate the same matter in a former action, the former determination is conclusive. (*Hedlund v. Miner* (1946), 395 Ill. 217, 69 N.E.2d 878.) Here the cause of action and the subject matter of both the Rolando suit and the Jacob suit are the same, and Jacob was a party to both suits. Thus *res judicata* is a bar to Jacob's suit.

Jacob's failure to put forward his claim in the Rolando suit has led to

162

the entry of two inconsistent judgments against the bank. As the bank so aptly argues, the effect of the two judgments is to try to divide the securities into "three halves." The result is unconscionable, and the fault must be laid at the feet of Jacob for failing to pursue his claim in the first suit.

For the reasons stated, we affirm the judgment in the Rolando suit (Circuit Court No. 72-2-30L), and reverse the judgment in the Jacob suit (Circuit Court No. 76-L-3).

Affirmed in part; reversed in part.

STOUDER, P. J., and ALLOY, J., concur.