RALPH OSBORN *et al.*

*v.*

THE JEFFERSON NATIONAL BANK OF STEUBENVILLE.

*Filed at Ottawa January 25, 1886.*

1.  WILL—*subsequent birth of child—effect thereof on the provisions in the will.*    Section 10 of the act in relation to descents, in which the rights of a child born to a testator after he has made a will, are prescribed, applies only to children for whom no provision is made by the will, and as to whom it does not appear by the will that they were intentionally disinherited.

2.  SAME—*what will amount to making provision for an after-born child.*    A married woman in 1873 made her will, by which she devised to her husband, and his heirs and assigns, all her estate, provided he should survive her, but in case he should not survive her, and she should die leaving children, then to her child or children, etc.·    In 1880 she died, leaving her husband surviving, and three children, all born after the date of the will:    *Held,* that the testatrix, by the will, had made provision for her children, within the meaning of section 10 of the act relating to descents, although depending upon a contingency.

3.  As a testator may totally disinherit his after-born child or children by his will, it follows that he may limit his bounty to them to anything, no mat-

ter how insignificant it may be, and make its enjoyment depend upon any contingency, however remote.

4. SAME—*whether a will shows an intention to disinherit after-born child.* A testatrix, in 1873, by her will, devised all her estate to her husband, in case he should survive her, otherwise to any child or children she might leave. She died in 1880, leaving her surviving three children, born after the execution of the will, and her husband: *Held,* that the will showed a clear intention on the part of the testatrix to disinherit her after-born children, in case of her husband surviving her.

5. SAME—*rule of construction—giving effect to the intention.* It is elementary in the construction of wills, that the intention of the testator must be given effect to, and to ascertain this the whole instrument must be looked to and taken into consideration.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding.

Messrs. ROSENTHAL & PENCE, for the appellants:

At common law the will of an unmarried woman was revoked by her marriage, and a married woman could not will her estate generally, but only her equitable separate estate.

At common law the will of an unmarried man was revoked by marriage and the birth of a child. *Tyler* v. *Tyler,* 19 Ill. . By the statutes of this State, the marriage of a man or woman operates to revoke his or her will. Rev. Stat. chap. 39, sec. 10; *Duryea* v. *Duryea,* 85 Ill. 43.

The provision to be made by will for an after-born child, by section 10 of chapter 39, relating to descents, to prevent a revocation must be certain and absolute in its character, and not contingent. It must not be dependent upon some other circumstance or future event, which may or may not result in a provision for such child. *Waterman* v. *Hawkins,* 63 Me. 156; *Holman* v. *Copeland,* 10 Ga. 81; 1 Williams on Executors, 239, (202,) note.

The statute prevents disinheritance by implication. The will in this case does not disinherit the testatrix's children.

As to decisions in other States on similar or somewhat analogous statutes, see *Walker* v. *Hall,* 34 Pa. St. 483; *Wil-*

*son* v. *Fosket*, 6 Metc. 404; *Buckley* v. *Girard*, 123 Mass. 11; *Bradley* v. *Bradley*, 24 Mo. 318; *Hagerdine* v. *Pulte*, 27 id. 423; *Hockensmith* v. *Slusher*, 26 id. 237; 54 id 500.

Messrs. JEWETT, NORTON & JEWETT, for the appellee:

Section 10 of the Statute of Descents is in terms limited to the case of after-born children for whom "no provision" is made in the will. It has no application to children for whom any provision is made. There is no requirement as to the nature or extent of such provision.

The intention to disinherit need not be stated in a formal manner. It is enough if that appears by the will, taken as a whole. That intention does appear, although it is made to depend upon the contingency of survivorship. The testatrix intended that if her husband survived he should take the estate to the exclusion of the children.

Under a statute that a child having no legacy given him by will, should be allowed to share in the estate, it has been held that any mention of the child in the will was sufficient to prevent the operation of the statute. (*Wilder* v. *Goss*, 14 Mass. 356.) So any evidence from the will that the child was not forgotten or intentionally omitted, was held sufficient. *Tucker* v. *City of Boston*, 18 Pick. 162; *Wilson* v. *Fosket*, 6 Metc. 400; *Converse* v. *Wales*, 4 Allen, 512.

The intention to disinherit may appear from any language of the will which states or implies it. *Ramsdell* v. *Wentworth*, 106 Mass. 320.

The presumption that the omission to name or provide for a child was unintentional, is rebutted when the tenor of the will, or any part of it, indicates that the child was not forgotten. *McCourtney* v. *Mathes*, 47 Mo. 533; *Pounds* v. *Dole*, 48 id. 270; *Hockensmith* v. *Slusher*, 26 id. 237.

Messrs. E. L. & H. C. TAYLOR, and Mr. WM. K. ROGERS, also for the appellants:

To disinherit an after-born child by will, one of two things must appear: either a provision must be made for such child, or the intention to disinherit must appear from the will. The provision must be certain and positive, and not contingent. *Holman* v. *Copeland,* 10 Ga. 81; *Waterman* v. *Hawkins,* 63 Me. 156; *Negus* v. *Negus,* 46 Iowa, 488; *Bancroft* v. *Ives,* 3 Gray, 367.

The intention to disinherit must appear in such certain and absolute terms as to admit of no doubt. The general rule of arriving at the intent from the whole will, does not obtain on this question. The child being unborn is the common reason why it is not mentioned or provided for, and for this very reason the statute steps in and says it shall not be disinherited by implication. It will not do to say there was here an intention to disinherit unborn children simply because they are omitted, or to say that because the whole estate is devised to some one else, therefore there must have been, from this fact, the intention to disinherit. The object and purpose of the statute is to protect after-born children, and it should not be held to be defeated by the omission of the name of a child not yet born or even begotten.

Mr. JUSTICE TUNNICLIFF delivered the opinion of the Court:

Prior to 1873, Margaret Andrews inherited from her father's estate the property in controversy, situated in the city of Chicago. In that year she intermarried with Francis S. Osborn, and soon after, being about to go abroad, made and published her last will and testament, the material parts of which, so far as the questions here are involved, read as follows:

"*Item First*—I give, devise and bequeath unto my dear husband, Francis S. Osborn, and to his heirs and assigns, absolutely, all my estate, property and effects, real and per-

sonal, in whatever it may consist or wherever situated at the time of my decease, provided my said husband shall survive me.

"*Item Second*—In case my husband, Francis, shall not survive me, and I shall die leaving a child or children, then I give, devise and bequeath unto such child, or if there be more than one, then to such children, equally, and to the heirs and assigns of such child or children, forever, all my estate, property and effects, real and personal, in whatever it may consist or wherever situated at the time of my decease."

She died in 1880, without having revoked or changed the will, leaving her husband and three children, the issue of the marriage, surviving her, viz, Ralph, about eleven, Abner, about six, and Eliphalet, about five years of age.    She never had any other children.    At the time of the execution of the will and of her death, she was domiciled in the State of Ohio, where, afterward, and on the 3d day of March, 1881, the will was admitted to probate.    Subsequent thereto, Francis S. Osborn gave mortgages upon the property, and it was also attached and sold by his creditors.    A bill having been filed to foreclose one of these mortgages, to which the children were made parties, they answered by their guardian *ad litem*, and also filed a cross-bill setting forth the facts herein stated, and claiming that under them, and by virtue of section 10 of the Statutes of Illinois, entitled "Descents," they are the absolute owners in fee of the premises, and that their father, said Francis S. Osborn, had only a dower interest in said lands at the time of giving the mortgages and of the attachment and sale of the premises, and pray that the same may be set aside as a cloud upon their title.    A demurrer was sustained to this cross-bill, and the appellants abiding thereby, the cross-bill was dismissed.

The only question for our consideration regards the construction of the section of the statute referred to, which is as follows:

"If, after making a last will and testament, a child shall be born to any testator, and no provision be made in such will for such child, the will shall not, on that account, be revoked; but unless it shall appear by such will that it was the intention of the testator to disinherit such child, the devises and legacies by such will granted and given shall be abated in equal proportions, to raise a portion for such child equal to that which such child would have been entitled to receive out of the estate of such testator if he had died intestate; and a marriage shall be deemed a revocation of a prior will."

It is very clear that if there is any "provision" made in this will for these children, the appellants, or if it appears by the will that it was the intention of the testatrix to disinherit them, then, in either case, the will must stand, and the decree dismissing the cross-bill be affirmed. The contention of the appellants is, that to be a "provision" for them, within the meaning of the statute, the devise or bequest in their favor must be certain and absolute, and dependent upon no condition or contingency whatever, and that as the devise to them, in this case, is only in the event that the testatrix's husband, Francis, should not survive her, there can not be said to be any "provision" made for them by the will; and as to the intention to disinherit, it is insisted that this must not be found by the court from any resort to construction, implication or inference to be drawn from the will, by reason of anything therein contained, unless this intention is so stated in the will in express terms. In our opinion, neither of these constructions should be placed upon the statute. As to the provision for the after-born children, the statute is silent as to its extent, or whether it shall be reasonable or not, as to when it shall commence or when terminate. By its plain, unambiguous meaning, it applies only to children for whom *no* provision is made by the will, and as to whom it does not appear by the will that they were intentionally disinherited. If *any* provision is made for them, then they do not come

within the purview of the statute. The testatrix was to be the sole judge of what this provision should be, and that the same was not to be left for the determination of the courts is manifest by the second clause of the section, which authorizes the disinheritance of such child or children altogether, if the testator shall simply indicate by his will that such was his intention. The greater includes the less, and as the testator may totally disinherit such after-born child or children, it would seem to follow that he may limit his bequests to them, if he makes any, to anything, no matter how insignificant it may be, and its enjoyment upon any contingency, however remote.

But whether any provision is made for after-born children or not, the will, under this statute, must still remain as originally made, "if it shall appear by such will that it was the intention of the testator to disinherit such child" or children. Does such intention appear by this will? That it does, in case the husband of the testatrix survived her, is too plain to admit of argument. A mere reading of the instrument is all that is required to demonstrate that. But counsel urge that this intention must be stated in express terms in the will itself. This the legislature have not, by the statute, seen proper to require, and we have no right or power to add to it words which would entirely change its plain meaning, and thus virtually repeal the statute.

It is elementary in the construction of wills that the intention of the testator must be given effect to, and to ascertain this, the whole will should be looked to and taken into consideration. The testatrix in this case had the power to disinherit her after-born children, and she has seen proper to do it upon a contingency which has happened, and great as the hardship to them may be, we feel constrained to hold that the will, under this statute, is valid, and must be enforced as their mother made it and allowed it to remain unrevoked and unchanged till her death.

The decree below is affirmed.      *Decree affirmed.*