(No. 14275.—Decree affirmed.)
CHRISTINA FROEHLICH, Appellant, *vs.* SOPHIE MINWEGEN
*et al.* Appellees.

*Opinion filed October 21, 1922.*

1. WILLS—*what shows testator's intention to disinherit after-born children.* To determine whether or not a testator intended to disinherit children born after his will was made, within the meaning of section 10 of the Statute of Descent, it is not essential that the intention be declared in express words but the facts and circumstances surrounding testator when the will was made may be considered; and where the testator had two children at the time the will was made but nevertheless gave all his property to his wife and allowed his will to remain unrevoked until his death, during which time five children were born, he must be held to have intended to omit after-born children.

2. APPEALS AND ERRORS—*appellees may sustain decree upon any theory.* It is the privilege of appellees to have the decree of the trial court sustained on any theory on which it can be legally sustained, even though the decision of the court was not based upon such theory and the appellees did not make the same contention before the trial court.

APPEAL from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

FRANK B. MURRAY, (THOMAS J. O'HARE, of counsel,) for appellant.

JOHN E. CRAHEN, and J. HENRY NISSEN, (IRA J. GEER, of counsel,) for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Christina Froehlich, appellant, filed her bill in the circuit court of Cook county against Sophie Minwegen and sixteen other defendants, who are legal heirs of John Minwegen, deceased, legal heirs of Sarah Roskoph, deceased, tenants occupying the premises in question, and other parties claim-

ing interests therein, and praying for partition of the prem-
ises and for an accounting against Sophie Minwegen. A
number of demurrers were filed to the bill by defendants,
which were sustained by the court and the bill was dis-
missed for want of equity. A freehold interest is involved
and the appeal is direct to this court.

The bill of the appellant sets forth the following facts,
which were admitted by the demurrers: Sarah Roskoph
died testate January 24, 1897, seized and possessed of two
parcels of real estate situated in Chicago, Cook county,
known as Nos. 44 and 63 East Walton place, and leav-
ing her surviving as her heirs-at-law, Matthias Roskoph,
her husband, Sophie Minwegen and Elizabeth Tholey, her
daughters, and Jacob and William Roskoph, her sons. The
will was duly probated, and Sophie Minwegen, the execu-
trix named in the will, duly qualified as executrix and trus-
tee. By the first clause of the will the testatrix devised
and bequeathed her whole estate, real and personal, to her
daughter Sophie, wife of John Minwegen, her heirs, suc-
cessors and assigns, in trust, to hold, manage, lease, control,
sell and convey. It authorizes her to borrow money and
secure the same by mortgage on part or all the property,
in such amounts and for such purposes as she may deem
best, including the construction of new buildings or the al-
teration or improvement of the old ones. In case of sales
of any of the estate, the trustee shall invest the proceeds
thereof in income-bearing securities. The second clause di-
rects the trustee to pay over the net income of the estate,
after payment of taxes, expenses, repairs and betterments,
to testatrix's husband, Matthias Roskoph, for and during
his natural life or until he shall marry again, in which lat-
ter case he shall receive one-third of such net income for
the remainder of his life and the remaining two-thirds shall
be applied to the payment of any indebtedness against the
estate, and in case there is none, then the same shall be in-

vested and added to the principal of the estate. The third clause provides that after the death of testatrix's husband the trustee shall sell the real estate, and every part thereof, at such time or times, for such prices and upon such terms, at public or private sale, as to her shall seem best, and the purchaser from her need not see to the application of the purchase money. The fourth clause provides that the trustee shall divide the proceeds of the estate upon the death of testatrix's husband among her children, Sophie, Elizabeth, Jacob and William, in equal parts, and shall immediately pay to Sophie and Elizabeth their respective shares thereof. The fifth clause provides that the trustee shall continue to hold, manage, invest and re-invest the shares of Jacob and William until they, respectively, attain the age of forty-five years, and that until that time she shall pay to them in convenient installments the net income thereof, and as they respectively attain the age of forty-five years the trustee shall pay them the principal thereof. The sixth clause provides that in case the estate cannot be sooner sold and converted into cash the same shall be sold after the death of testatrix's husband and before William attains the age of forty-five years. By the seventh clause she nominates and appoints Sophie Minwegen as executrix, and by the eighth she provides that her son-in-law, John Minwegen, shall succeed as executor and successor in trust in case of Sophie's death, refusal or inability to act.

Elizabeth Tholey died intestate December 9, 1897, leaving her surviving Sarah, Franz and Joseph Tholey as her only heirs-at-law. Sophie Minwegen acted as executrix until May 1, 1899, at which time she rendered her final report, informing the court that Elizabeth Tholey had died and that due proof of heirship had been made. Her report further showed that all debts and costs of administration had been paid, that all legacies under the will had been paid, and that there was no personal property belonging to

the estate. She was thereupon discharged as executrix and the administration was declared settled.

On December 10, 1903, Jacob Roskoph and wife by deeds conveyed and quit-claimed to John Joseph Minwegen, a bachelor, all their interest in the two pieces of real estate described in the will. On December 12, 1903, John Joseph Minwegen conveyed by two deeds all his interest in the two pieces of real estate to Agnes G. Roskoph, wife of Jacob Roskoph. On July 16, 1913, John Minwegen, the husband of Sophie Minwegen, at her instance and request, paid over to Agnes G. and Jacob Roskoph the sum of $2500 in full of their distributive share in the estate of Sarah Roskoph, and they then and there by quit-claim deed conveyed all their interest in the two pieces of real property to John Minwegen. John Minwegen, at the request of Sophie Minwegen, on October 23, 1913, paid over to Sarah, Franz and Joseph Tholey, in full of their distributive shares of the estate, the sum of $2630.47, and thereupon all three of them released Sophie Minwegen as executrix and trustee by a written release, and then and there conveyed and quit-claimed all their interest in the two pieces of real estate to John Minwegen, all of which deeds are on record. John Minwegen about the time of the delivery of said deeds went into possession and took sole charge and management of the property, collected the rents, income and profits thereof, paid the taxes thereon and the special assessments and water rates levied against the same, and the expenses of keeping the same in good condition and repair, at the special instance and request of Sophie Minwegen, and at certain intervals paid over one-fourth of the net income therefrom to William Roskoph, one-fourth to Sophie Minwegen, and retained the remaining one-half thereof for himself; that by common consent and acquiescence of Sophie Minwegen, William Roskoph and John Minwegen, the arrangements, management and payments were continued up to the death of John Minwegen.

304—30

John Minwegen died testate about February 1, 1918, and his will was probated. He devised and bequeathed all of his property by one paragraph, which is in this language: "All my property of every description, real and personal, that I may own at the time of my death, I give to my wife, Sophie Minwegen, to be hers absolutely forever. I nominate my said wife, Sophie Minwegen, to be the executrix of this my will, and direct that she be not required to give any security on her bond as such executrix." This will was dated April 21, 1887. Sophie Minwegen qualified as executrix under this will, paid and discharged all claims and demands against the estate, including the widow's award, and fully administered the estate, and about May 2, 1919, was duly discharged as executrix. At the date of his will Minwegen was lawfully married to Sophie, and continued so up to his death. Prior to the making of his will he had two children born of said marriage, Sophie M. Leschorn and Elizabeth M. Conway. After the making of the will there were born of said marriage six children, one of whom died in infancy and the others are still surviving, and are named Margaret, Rose, John A. and William T. Minwegen, and Christina Froehlich, appellant.

The bill sets out the interests of the parties to this suit in the two pieces of real estate as follows: To William Roskoph an undivided seven-twenty-eighths; to appellant, Margaret, Rose, John A. and William T. Minwegen each an undivided two-twenty-eighths, subject to the dower right of Sophie Minwegen; that Sophie Minwegen is entitled to an undivided eleven-twenty-eighths of the real estate and dower in the undivided ten-twenty-eighths of the remainder, and that the other defendants are interested only as tenants or under claims subject and subordinate to the claims aforesaid.

It is the contention of appellees that by the will of Sarah Roskoph an active trust was created and that there was a conversion of the real estate into personal property, and

that the same is effective, and therefore the deeds to John Minwegen of the property of the testatrix conveyed no title to him in the real estate. It is also their contention that there was no re-conversion by the heirs of the testatrix after her death as there was no concurrence of all the devisees in such a scheme, and that the deeds in question conferred upon John Minwegen only a right to share in the proceeds of the sale of the land by the trustee, if anything. It is their further contention that if the title to the real estate in an undivided half did pass to John Minwegen, by his will all his title was devised to Sophie Minwegen and that his children born after his will was made took no title to such real estate, and therefore appellant was neither entitled to partition nor to an accounting, and her bill was properly dismissed for want of equity. On the other hand, it is contended by appellant that there was no conversion of the real estate into personal property by the will of Sarah Roskoph, and that if there was there was a re-conversion by her devisees after her death, and that John Minwegen died owning an undivided one-half. It is her further contention that his children born after his will was made took title to such real estate in the proportions set out in the bill of complaint, under the provisions of section 10 of our statute on descent, which is in this language: "If, after making a last will and testament, a child shall be born to any testator, and no provision be made in such will for such child, the will shall not on that account be revoked; but unless it shall appear by such will that it was the intention of the testator to disinherit such child, the devises and legacies by such will granted and given, shall be abated in equal proportions to raise a portion for such child equal to that which such child would have been entitled to receive out of the estate of such testator if he had died intestate, and a marriage shall be deemed a revocation of a prior will."

Under our conclusion in this case it is only necessary to consider the last proposition contended for by appellant

and resisted by appellees. If it be conceded that John Minwegen died owning an undivided half of the real property in question, we hold that under his will the entire title to the same was devised to Sophie Minwegen, his widow. To hold otherwise would be against the positive provisions of his will and to defeat his intentions as expressed in that will, if we are permitted to consider all the facts set forth in the bill of appellant. Following two former decisions of this court, this court in *Peet* v. *Peet,* 229 Ill. 341, held that while statements of the testator made before or after a will is executed cannot be received to prove what was intended by the written words of the will, still under section 10 of the statute on descent, which makes provision for after-born children of the testator not provided for in the will "unless it shall appear by such will that it was the intention of the testator to disinherit" such children, it is not essential that such intention shall be declared in express terms but the same may appear from a consideration of proven facts and circumstances surrounding the testator when the will was made. It was accordingly held in that case that a will devising all the testator's property to his wife sufficiently manifests the testator's intention to disinherit a child born one and one-half years after the will was made, after considering the provisions of the will and the proved facts and circumstances surrounding the testator when the will was made. We regard that case as on all-fours with this case, and that to maintain the bill of appellant in this case would be, in effect, to overrule the decision in the *Peet case.* It is true, this case is to be decided on demurrer, but the facts set forth in the bill show that the testator had two children born at the time the will was made, who are disinherited by the express terms of the will; that five children born after the will was made still survive and for whom no provision is made by the will; that the testator was married to and the lawful husband of Sophie Minwegen and so continued

until the time of his death, and that the seven children are his only heirs-at-law. As the bill alleges that the will was the duly probated will of John Minwegen, we are authorized to consider it as an admitted fact that he made no other will although he had after-born children for whom no provision was made in his will. The fact that the testator allowed his will thus made to remain unrevoked and unchanged till his death is a fact that must have weight in determining his intention as expressed in his will, under the holding in *Osborn* v. *Jefferson Nat. Bank,* 116 Ill. 130, and *Hawhe* v. *Chicago and Western Indiana Railroad Co.* 165 id. 561, the two decisions followed in the *Peet case,* · *supra.* This fact, taken into consideration with the other fact that he had two living children when his will was made for whom he intentionally failed to make any provision by his will, shows conclusively that it was his intention that his wife should have all his property, and that he trusted to her good judgment and sense of duty to make proper distribution among their children before her death.

It is pointed out by the appellant that appellees did not make the contention before the trial court upon which we are asked to and upon which we decide this case. Whether that is true or not, it was appellees' privilege to have the trial court sustained on any theory upon which it could be legally sustained, even though its decision was not based upon such theory.

Under our holding appellant was not entitled to maintain her bill, and she therefore has no right to a decision upon the other questions presented by her.

The decree of the circuit court is therefore affirmed.

*Decree affirmed.*