**CITY NATIONAL BANK etc. v
KELLY et**

Probate Court, Franklin Co.

No. 81587

Connor & Nester, Columbus.
Charles A. Eberly, Columbus.
Forrest Smith. Columbus.
L. M. Sandles, Columbus.
John T. Sullivan, New York.
Squire, Sanders & Dempsey, Cleveland.

## OPINION

By McCLELLAND, J.

This matter comes on to be heard upon the petition filed herein by The City National Bank & Trust Company, and Carl A. Eberst executors of the Last Will and Testament of Edmund P. Kelly, deceased, against Bess Micklethwaite Kelly et, asking the Court for a declaratory judgment as to whether the creation of an irrevocable trust in favor of the testator's adopted son constitutes a settlement as contemplated by §10504-49 GC, and, whether by virtue thereof the adopted child of the testator is denied the right to inherit a portion of the decedent's property.

The Court finds that on August 12, 1932, Edmund P. Kelly executed a last will and testament, the provisions of which are hereinafter set forth, and that on October 24, 1932, Edmund P. Kelly, and the defendant, Bess Micklethwaite Kelly, through the courts of the State of Illinois adopted a child, and gave him the name of Dennis R. Kelly.

The Court further finds that on December 30, 1935, Edmund P. Kelly executed an irrevocable trust agreement for the benefit of the said Dennis R. Kelly, and by the terms of which the said City National Bank & Trust Company was made the trustee of the corpus of the trust. The will above referred to was admitted to probate by the Probate Court of Franklin County, Ohio, and The City National Bank & Trust Company, together with Carl A. Eberst, qualified as co-executors of said will.

By the terms of his will, the testator, after directing the payment of his just debts and funeral expenses, makes provision for the erection of a mausoleum, the cost not to exceed the sum of $30,000.00, and in the next succeeding item he gives his wife a specific legacy in the amount of $10,000.00 in cash.

By the next item of his will he creates a trust in the sum of $10,000 for the maintenance of said mausoleum.

In Item 5 of his will he creates a trust of $5,000.00 with the Pontifical College Josephinum, as trustee, for charitable purposes.

By the next succeeding item, he gives to his wife all of his household furnishings, books, automobile, statuary, jewelry and personal wearing apparel.

After payment of his debts and the creation of the trusts hereinbefore mentioned, he provides that all the rest, residue and remainder of his estate shall go to The City National Bank & Trust Company of Columbus, Ohio, and Carl A. Eberst, as trustees for purposes therein named. The will further provides that upon the termination of said trust last above named, then the corpus shall be distributed by the trustees in equal portions to the following named persons and organizations:

1. Bishop of the Catholic Church in and for the diocese of Columbus, Ohio.

2. To the Sisters of the Poor of St. Francis at St. Anthony's Hospital, for the maintenance of said hospital in the City of Columbus, Ohio.

3. One share to the Sisters of the Poor of St. Francis for the maintenance of St. Francis Hospital.

4. To the Sisters of Good Shepherd, for the care and management of the convent of Good Shepherd, in the City of Columbus.

5. To the Dominican Sisters of the Sick Poor for the purposes therein named.

6. To Hawkes Hospital of Mt. Carmel, Columbus, Ohio, for the maintenance and operation of Hawkes Hospital of Mt. Carmel, in the City of Columbus, Ohio.

. By the terms of the trust agreement which was executed on December 30, 1935. and contemporaneous with the execution of said trust agreement, the said Edmund P. Kelly deposited with the City National Bank & Trust Company, certificates for six thousand shares of The Capital City Products Company, which shares at that time had a valuation of $126,000.00

The Trust Agreement contains the following language:

"The Trustee shall hold, manage and control the property at any time forming a part of the Trust Estate, with all the rights and powers herein granted to the Trustee, and subject to the rights hereinafter reserved with the Settlor. The net income derived hereafter from the investment and re-investment of the Trust Estate shall be accumulated, invested and be added to the principal of the Trust Estate until the adopted son of the Settlor, Dennis R. Kelly, arrives at the age of twenty-one (21) years, (born July 26, 1932). When said Son, Dennis R. Kelly, arrives at the age of twenty-one (21) years, the Trustee shall pay to him the net income received thereafter from the Trust Estate. Until said son arrives at the age of twenty-one (21) years the Trustee at the request of Bess M. Kelly, wife of the Settlor, and after her death at the request of the Guardian of the Son of the Settlor, may pay to said wife or Guardian for the benefit of said Son out of the income and/or principal of the Trust Estate such amounts as from time to time the Trustee in its absolute and uncontrolled discretion deems necessary and advisable for said son's proper care, comfort, education, maintenance and support, having due regard to his station in life, manner of living and income from other sources. After said Son arrives at the age of twenty-one (21) years upon his request the Trustee in its discretion may pay to said Son out of the Trust Estate such part of the principal as it may deem just and reasonable for his proper care, comfort, education, maintenance and support, and at the times heretofore mentioned, if in the judgment of said Trustee it is advisable to mortgage, pledge or otherwise encumber the Trust Estate for the purpose of proper care, custody, education, maintenance and support of said minor son, Dennis R. Kelly, the said Trustee is hereby authorized to do so, and may loan from its own Commercial Department for this purpose, but if said Trustee does mortgage, pledge or otherwise encumber said Trust Estate it shall make a record on the books of the Trust Committee the reason or reasons for such mortgaging. pledging or encumbering, and said Trustee's judgment shall be final." * * *

At the time said Son, Dennis R. Kelly, arrives at the age of thirty-five (35) years the Trustee shall pay and distribute to him, to be his absolutely, the balance of income and principal then remaining in the Trust Estate.

The Trust Agreement also contains the following language:

"It is the intent of the Settlor that the Stock in The Capital City Products Company, its successors and assigns, be retained as an investment of the Trust after his death so long as it is, in the judgment of the Trustee, for the best interests of the Trust."

At the hearing of this matter it was disclosed by the Trustees that the cor-

pus of the trust had been increased by interest additions, to the value of $135,-636.73, on December 29, 1938.

The Declaratory Judgment sought in this matter arises in the construction of §10504-49 of the Probate Code, with reference to the facts before the Court. The above named section contains the following language:

"If after making a last will and testament, (a) the testator has a child born alive. or (b) the testator adopts a child, or (c) the testator designates an heir in the manner provided by law, or (d) a child or designated heir absent and reported to be dead proves to be alive, and no provision has been made in such will or by settlement for such pretermitted child or heir, or for the issue thereof; the will shall not on that account be revoked, but, unless it shall appear by such will that it was the intention of the testator to disinherit such pretermitted child or heir, the devises and legacies by such will granted and given shall be abated proportionately, (or in such other manner as may be found necessary to give effect to the intention of the testator as shown by the will) so that such pretermitted child or heir will receive a share equal to that which such person would have been entitled to receive out of the estate if such testator had died intestate. In the event of the death of such child or heir prior to the death of the testator, the issue of such deceased child or heir shall receive the share the parent would have received if living. * * *

"Though measured by the law of intestate succession, the share taken by a pretermitted child or heir shall be considered as a testate succession."****

It therefore becomes obvious that the sole and only question presented by the petition for the Declaratory Judgment is whether the creation of the irrevocable trust for the benefit of said adopted child constitute a settlement as contemplated by the wording of the above named statute, and whether the adopted child is entitled to take the portion of the testator's estate which he would have taken had no will been made or no settlement made.

It is the contention of the guardian ad litem for Dennis R. Kelly, the adopted child, that the creation of the trust above referred to is not a settlement as contemplated by the statute.

It is the contention of the residuary legatees that the creation of the trust is a settlement within the meaning of the statute. and that by virtue thereof, the adopted child is precluded from taking any portion of the testator's estate owned by him at the time of his death.

In determining this matter it is the court's duty to determine what constitutes a settlement, and what the intention of the testator was when he made the will and when he created the trust. The court is not concerned with the wisdom of the testator, nor with the amount of the settlement, if it constitutes a settlement.

Upon an examination of the decisions of the Ohio courts, we find that there is no reported decision directly in point with the facts before the Court in this matter.

We have also examined the decisions of courts of other states cited by counsel. We find that they are of very little help in arriving at a correct conclusion in the matter at Bar.

Our attention has been called by counsel for the adopted child to a decision of the Ohio Supreme Court, **Rhodes v Welde, 46 Oh St at page 234,** in which the court was construing a former statute of Ohio.

It is the contention of counsel for the adopted child that the trust agreement does not provide for an immediate benefit for the child, and that therefore it is not a settlement as construed by the Supreme Court in the case above cited. We quote from page 242 of the decision as follows:

"Fortunately for us, 'provisions by some settlement' is a phrase of easy construction. It certainly implies, if not a sufficient, at least a substantial, present means of maintaining the child. A settlement at once suggests

the intervention of trustees upon whom is conferred a fund or property in some form which constitutes a source of maintenance, education, etc. A provision by some settlement which could not become available until the termination of a life tenancy or interest, and which depended upon the contingency of the beneficiary outliving the life tenant, and which, in case of the latter surviving the former could never be devoted to the uses to which it was appointed. would be a strange absurdity. Lamplugh v Lamplugh, supra."

Item one of the will under consideration in that case contained the following language:

"Item first—I will and devise to my wife, Harriet Young, all my real estate wheresoever situate, to use and occupy as to her her may seem proper during her natural life, and after her death, to the heirs of her body begotten; but should she die without issue, then I will devise the same to Frank Young and Jennie Young, children of my brother William Young, and Eben Kirkpatrick, equally."

At the time the will was executed the testator had no children. In December, 1862, Elizabeth Young Rhodes, was born to Harriet Young, being the only child of John Young. The will was probated. Elizabeth Young Rhodes received nothing from the estate of her father. No provision had been made for her by her father by way of "some settlement". After the death of John Young, Harriet, his widow, married Samuel Welde and to them five children were born, and, in the meantime, Elizabeth married Rhodes. Elizabeth brought an action to contest the will upon the ground that it had been revoked by her birth after its execution, she being unprovided for by it. The court below held that under the will provision had been made for Elizabeth Young Rhodes, which ruling the Supreme Court reversed, and in the opinion the Court used the language quoted above construing the provision of the then statute as to "* * * provisions"

* * * having been made for an after born child by "some settlement".

Upon on examination of the trust agreement, we find that there is an explicit provision by which the Son may be taken care of at the request of the adopting mother. This is found in the following language:

"Until said Son arrives at the age of twenty-one (21) years the Trustee at the request of Bess M. Kelly, wife of the Settlor, and after her death at the request of the Guardian of the Son of the Settlor, may pay to said wife or Guardian for the benefit of said Son out of the income and/or principal of the Trust Estate such amounts as from time to time the Trustee in its absolute and uncontrolled discretion deems necessary and advisable for said Son's proper care, comfort, education, maintenance and support, having due regard for his station in life, manner of living and income from other sources."

It is our opinion therefore, that the case of Rhodes v Welde sustains, rather than refutes the contention that the creation of the trust has at least some elements of a settlement, as contemplated by the statute now under consideration. The former statute construing the Rhodes case reads as follows:

"If the testator had no children at the time of executing his will, but shall afterward have a child living, or born alive after his death, such will shall be deemed revoked, unless provisions shall have been made for such child by some settlement, or unless such child shall have been provided for in the will, or in such way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption or revocation shall be received."

It is to be noted that the trust agreement is entirely silent as to the existence of the will or the provisions thereof, and that the will makes no reference whatsoever to the child, either to disinherit or provide for him, and

that neither of those instruments contain any expression of an intention to do anything in the future for the adopted child. But in order to determine whether the trust agreement constitutes a "settlement" as contemplated by the statute, we certainly must take into consideration the provisions of the will with reference to the objects of his bounty, as well as the provisions of the trust agreement for the benefit of the adopted child. It is also our opinion that we may take into consideration any other extrinsic evidence to determine the intent of the settlor at the date of settlement, as to what he wished to accomplish by that particular instrument. The two instruments should be construed in the light of each other. When he made the trust agreement, he is presumed to have known of the existence of the will made by him three years prior thereto, the provisions made therein for his wife and charitable institutions, and also the absence of provisions for his adopted child. He is also charged with the knowledge of the law. With the will in mind he is charged with the knowledge that if he makes no settlement for the child the child would take the portion of his estate which he would have taken in case Mr. Kelly left no will.

With these presumptions in mind, we must determine whether the execution of the trust agreement and the creation of the trust in pursuance of the terms thereof constitutes a gift inter vivos. If it is a gift inter vivos it is not a "settlement" which precluded the child taking a portion of the estate of Mr. Kelly at the time of his death. If it is not a simple gift inter vivos, is it a "settlement" as provided by the statute?

A gift inter vivos is a transfer of property to a donee during the life of the donor for no consideration, with the intention on the part of the donor to divest himself of control or dominion over the subject of the gift, and with no conditions imposed thereon to be met by the donee.

As we understand the statute a "settlement" is a provision made extraneous to the will for the benefit of an after-born or after adopted child, with the intention on the part of the settlor that such provision shall preclude the child from taking any other portion of the testator's estate at the time of his death.

It is necessary to make some distinction between a gift inter vivos and settlement for the reason that designing persons might attempt to construe any voluntary gifts inter vivos to an adopted child to be a "settlement" which would preclude the child from exercising its lawful right to inherit. With the provisions of the will and the trust agreement in mind, what extraneous evidence do we have to determine what the testator and settlor meant to accomplish by the creation of the trust? It is our opinion that this court can not consider any testimony indicating the intention of Mr. Kelly as to any future provisions for the child. These two instruments must be considered together, and the same rules of evidence must be applied to both. In construing a will, a court cannot receive testimony as to the intention of the testator to change his will in the future. In attempting to determine the intention of the testator in creating the trust agreement we must confine the testimony to that which shows to his intention at the time it was made, and not what he intended to do in the future.

With these observations in mind we have examined the transcript of the testimony and find that we must exclude the testimony of the insurance agent, whose testimony related to his conversations with Mr. Kelly pertaining to a prospective trust for the benefit of the boy, and which conversations occurred long after the trust was created. We have also considered the testimony of Mr. Eberst offered at the hearing. It was disclosed that this

witness was the private secretary of Mr. Kelly and that he had acted in that capacity for many years.

The following questions and answers are found in the transcript:

Q. How frequently would you say you had discussions of that kind with him   A. It is very hard for me to say. I might explain it this way. Mr. Kelly and I had occasion to talk over various business matters several times a week, and shortly after this child was adopted he immediately started talking as to what he would do for this boy, and in what manner, and, of course, when we got close to the time when this trust agreement was finally made, there were quite a few discussions.

Q. Now let me ask you, subsequent to the execution of the trust agreement, after it had been put into effect, did you discuss it?   A. Well, the only way I can answer that is this, that after the trust agreement was made, Mr. Kelly told me that he wanted to set aside for Dennis at least a minimum of $5000.00 a year, which, with the exemption under the gift tax regulation. he told me that he should arrange to set aside at least $5000.00 a year.

The above quoted conversations, occurring so close to the time the trust was created, may be considered in determining what Mr. Kelley's intention was in creating the trust at the time it was created. In our opinion this testimony, considered in the light of the provisions of the will and the trust agreement, strongly indicates that Mr. Kelly was intending to create a provision for his adopted son which would preclude a disturbance of the provisions of his will for the benefit of his wife and the other objects of his bounty.

Now let us determine whether the trust agreement has the necessary characteristics of a "settlement" as contemplated by the statute. The only reported case in Ohio is that of **Rhodes v Welde**, reported in **46 Oh St page 234,** hereinbefore referred to, which defines some of the characteristics of a "settlement". That case involved a will contest, and determined whether the will contained a "provision for an afterborn child, but the decision also contains a discussion of some other cases defining the term "settlement".

We have hereinbefore referred to the above case and made the observation that it sustains rather than refutes the contention of the child's guardian in that the trust provides for a present means of support for the child if it becomes necessary.

The Court discusses a case reported in 10 Ga. pp 80, 81, 82, in which the Court held that "the statute contemplates the present or probable existence of an after-born child, in the mind of the testator, when he makes his will, and thereby makes a positive provision for the child."

The Court further discusses a case of Waterman v Hawkins, 63 Maine 156, in which it was held that in order to bar a posthumous child it must definitely appear that some provision relating expressly to him was made.

The Court also discusses a case decided by the Supreme Court of Mass. Brown v Hoxie, in which a statute of Mass. was being construed, and quotes the court as follows:

"The statute rather means to include cases where a child, born after the father's death, has no direct specific, or intentioned provision made for him."

Although the above named cases involve the construction of wills containing provisions for after-born children, it is our opinion that the same characteristics should apply to a "settlement" made extraneous to the will. We find that the trust does contain a distinct, intentional provision for the after-adopted child of Mr. Kelly.

We must at all times keep in mind that the right of inheritance is purely a statutory right. The only interest which a child has in the estate of a parent is created by statute. If a parent dies intestate, a child takes his statutory share. If a parent dies testate, a

child takes only what the parent devises or bequeaths to him. The parent may give a child all of his estate, he may give him much or little, or he may give him nothing, subject, of course, to the right of the surviving spouse, if any.

If a parent wishes to make a "settlement" for an after-born or after-adopted child in order that his will may remain undisturbed at his death, he may provide generously or stingely for the child. He may give him much or little, if that be his intention at the time the settlement is made.

Upon an examination of the trust agreement we find a clause by the terms of which the settlor reserves the right to add to the corpus of the trust during his life time, and to add to the same by bequest or devise. Upon first consideration of this clause, we were inclined to attach considerable significance to it. But upon thorough consideration we find that no such weight should be given to this clause. If one should make a will and, at the same time express his dissatisfaction with same, and express an intention to change it later, that expression of intent could not be used to disturb the will when the testator died. So neither can a reservation to increase a settlement be considered as an ▉▉▉▉▉▉ ▉ indication of the lack of finality of the settlement when it is made.

We have made the above observation from the examination of the only decision of the Ohio Supreme Court, and we will now go to the decisions of the Supreme Court of the State of New York, which state has a statute substantially the same as the one we are now considering.

The New York statute is as follows:

"Whenever a testator shall have a child born after the making of a last will, either in the lifetime or after the death of such testator, and shall die leaving such child so after-born unprovided for by any settlement, and neither provided for, nor in any way mentioned in such will, every such child

shall succeed to the same portion of such parent's real and personal estate, as would have descended or been distributed to such child, if such parent had died intestate, and shall be entitled to recover the same portion from the devisees and legatees in proportion to and out of the parts devised, and bequeathed to them by such will."

Our attention has been called by counsel for the Catholic Charities to a decision in the Supreme Court of New York, in re Brant's Estate, 201 N. Y. S. 60, the syllabus of which is as follows:

"Where testator's only son was named beneficiary of several life insurance policies, though he was not mentioned in the testator's will made several years before the Son was born, he was 'provided for' within Decedent Estate Law, par. 26, declaring that a child born after the making of a will, who is unprovided for by any settlement, and who is not mentioned in the will, shall succeed to the portion of such parent's estate that he would have received if the parent died intestate: 'settlement' meaning 'to provide for' or 'to make provision for', and he was therefore not entitled to succeed to any part of the estate."

It is quite obvious that the court in construing the matter attempted to determine what the intention of the testator was when he made the provision which it was construing.

Our attention has been called to the case of In Re Barker's Estate, 266, N. Y. S. 47. We quote from the syllabus as follows:

"Under statute, if provision for child born after making of will is made by settlement, right of intestate succession never accrues.

Where testator created insurance trust of $50,000.00, in which children born after making of will had immediate and vested interest, such children were provided for by 'settlement', so that right of intestate succession never accrued."

We consider the decision of the New York Court of great importance, and especially applicable to this situation because of the similarity of the Ohio Statute to that of New York.

Our attention has also been called to a decision of the Supreme Court of Wisconsin, in which a somewhat similar statute was being construed, the case being In Re Dongas Estate, 103 Wisc. 497, where the court uses the following language:

"Considering our own statute untrammeled by the variant decisions of other courts, it must be born in mind that the legislative purpose was not to restrict the parent, nor to dictate to him what provision he should make. It was not to control his intention, but to provide for after-born children in the not improbable event of forgetfullness or oversight of the parent, upon the very presumption, indeed, that if he had thought of them he would have intended that they should have some share in his estate, and that share the law would then fix. The power of the testator to decide whether anything, and if so how much, and in what form, should be given to after-born children, is as uncontrolled as if there were no statute on the subject. And if it be apparent that he was not forgetful,—that he had the after-born child in mind, and satisfied the statute by making for it some provision,—we do not conceive it the purpose of the statute nor the province of the court to say that such will shall not govern, but that he not only must make some provision in any particular form. Such holding seems to us to import into the statute words and purpose not necessarily there, and would infringe upon the freedom of will in disposing of property and regulating estates. It is not apparent why it should not be as much in the power of the testator to place a child, born after the making of the will, in a state of dependency on the mother, as it confessedly is to do so with the child in existence when the will was made. The perils to the child in each case are the same, and the reasons justifying or failing to justify in-

terference by the legislature with the parent's wishes on the subject do not vary in one case from the other."

Our attention has also been called to the case of Osborn v Bank, 116 Ill. 130, the third paragraph of the syllabus being as follows:

"As the testator may totally disinherit his after-born child or children by his will, it follows that he may limit his bounty to them to anything, no matter how insignificant it may be, and make its enjoyment dependent upon any contingency, however, remote."

In its opinion in the above cited case, the court says:

"* * * As to the provision for the after-born children, the statute is silent as to its extent or whether it shall be reasonable or not, as to when it shall commence or when terminate. By its plain, unambiguous meaning, it applies only to children for whom no provision is made by the will, and as to whom it does not appear by will that they were intentionally disinherited. If any provision is made for them, then they do not come within the purview of the statute. The testator was to be the sole judge of what this provision should be, and that the same was not to be left for the determination of the courts which authorized the disinheritance of such child or children, if the testator shall simply indicate by his will that such was his intention. The greater includes the less, and as the testator may totally disinherit such after-born child or children, it would seem to follow that he may limit his bequests to them, if he makes any, to anything, no matter how insignificant it may be, and its enjoyment upon any contingency, however, remote."

To the same effect are several holdings of Pennsylvania Courts. The leading case in this state, In Re Newlin's Estate, 209 Pa. 456, the syllabus is:

"The act of April 8, 1883, Section 15, P. L. 249, relating to the revocation of

a will by the subsequent birth of a child, makes no requirement that the child shall be fully or adequately provided for, That is left to the discretion of the parent as in the case of living children. All that it does require is that he shall have the child in mind, and shall make clear his intention that the will. shall apply to it. Any provision which does that is sufficient, and the inquiry, whether large or small, equal or unequal, vested or contingent, present or future, is irrelevant and outside the jurisdiction of the courts, except so far as it tends to throw light on the question of intention."

In the opinion in the Newlin case, beginning at page 464, the following expressions occur:

"Similar expressions occur throughout our reports, and while the repugnance to disinheriting the heir and the hardship of some cases, have induced the courts to lean against doubtful provisions, it appears to have been universally conceded that an actual provision, clearly intended for the afterborn child will satisfy the statute, no matter how small the provision is. No case can be found to controvert this position, and this being once conceded the conclusion is unavoidable that the only test of what the statute requires is the intention of the testator. * * *

The statute as said Sharswood, Judge, in Willard's Estate, 68 Pa. 327, makes no requirements that the child shall be fully or equally provided for. That is left to the discretion of the parent as in the case of his living children. All that it does require is that he shall have the child in mind, and shall make clear his intention that the will shall not apply to it. Any provision which does that is sufficient, and the inquiry whether large or small, equal or unequal. vested or contingent, present or future, is irrelevant and outside the jurisdiction of the courts except so far as it tends to throw light on the question of intention. Any other doctrine would lead to the result that a child

born the day before a will was made, might take absolutely nothing, and yet be remediless, while a child born a day after the making of the will could not be barred from a legal share under the intestate law, without a provision which a court shall pronounce adequate. The law makes no such unsubstantial and unwarranted distribution."

To the same effect is Randall v Dunlap, 218 Pa. 210, where the following syllabus occurs:

"All that the Act of April 8, 1883, Section 15, P. L. 249, requires relative to the provision for an after-born child, is that the testator shall have the child in mind, and shall make clear his intention that the will shall apply to it. Any provision which does that is sufficient, and the inquiry, whether large or small, equal or unequal, vested or contingent, present or future, is irrelevant and outside the jurisdiction of the courts, except so far as it tends to throw light on the question of intention."

In regard to the North Carolina Statute, the court in Flanner v Flanner, 160 N. C. 126, said that:

"Construing this and other statutes of like purport, the courts have generally held that they were not designed to control the parent as to the provision he should make for his child; but the correct interpretation should proceed on the theory that the law was only intended to apply when the omission to provide for an after-born child was from inadvertence or mistake, and this postion should be allowed to prevail, unless the will, in express terms, showed that the omission was intentional, or unless, as contemplated by the statute, provision was made for the child by the parent, either under the will or by gift or settlement untra 'whether before, contemporaneous with, or after the making of the will'."

The Supreme Court of Virginia speaks to the same effect in Allison v Allison, 101 Va., page 537, where it is said:

"Without the aid of any authority, but relying only upon established rules of construction to ascertain the meaning of our statute, we would be constrained to hold that any provision which afforded evidence that the child had not been forgotten was sufficient to prevent the application of the statute; that the statute did not intend to produce equality, or to diminish the power of the testator, but merely to regulate its exercise; and that a vested remainder carrying with it enjoyment, answered the demands of the statute."

We have one further reflection with reference to the presumptions which arises from the facts in the case before us.

When Mr. Kelly made his will he is presumed to have known that it would be probated at the time of his death. He is also presumed to have known the law. Therefore, when he made the Trust Agreement, he is charged with the knowledge that if the creation of the trust was simply a gift and not a settlement, his adopted child could take one-half of his net estate, as provided by statute. He is also presumed to have knowledge that his surviving spouse could elect to take under the statute rather than under the will, thereby taking one-half of his net estate. Should the child take one-half of the net estate, and the wife take the other one-half, this would effect practically a revocation of his entire will. He made the Trust Agreement with full knowledge of the provisions of his will, and he is presumed to have wished the provisions of his will to be fully performed. If this be not a settlement, then Mr. Kelly is presumed to have wished his will carried out, and he is also presumed to have created a situation under which his will could not be carried out.

At the time the Trust Agreement was made he withdrew assets in the amount of $126,000.00 from his control, and placed it in an irrevocable trust for the benefit of his son. The corpus of this trust could thereafter never become a part of his estate. He did this with full knowledge that he had a will in existence which would provide for the Catholic institutions in which he had a deep interest, and also provide for his widow in a most generous manner.

It is therefore our opinion that the only reasonable and logical construction which can be put upon the act of Mr. Kelly in setting up the irrevocable trust in the face of the fact of an existing will, the beneficiaries of which were institutions and persons in whom he had a deep and abiding interest, is that he intended that the provisions made by the Trust Agreement, and any future additions for which he might provide, would preclude the son from interfering with the operation of his will by reducing the volume of the bequests thereunder.

In the light of the above referred to decisions by the courts of New York, Pennsylvania, Wisconsin and Illinois, and, for the reasons hereinbefore stated, this court is compelled to come to the conclusion that Edmund P. Kelly, by the execution of the irrevocable trust for the benefit of his adopted child, while leaving his will undisturbed, intended and did provide "by settlement" within the meaning of the statute for his adopted child. Therefore, the court holds that Dennis R. Kelly, the adopted son of Edmund P. Kelly, has no interest in the property of Edmund P. Kelly which he owned at the time of his death.